[S. F. No. 1167.     Department One.—July 28, 1899.]

LONDON AND SAN FRANCISCO BANK, LIMITED, Respondent, v. LOUIS B. PARROTT et al., Defendants. ABBY M. PARROTT et al., Appellants.

BANKS—LETTER OF CREDIT AND GUARANTY—NOTICE.—A written instrument requesting a bank to give continued credit to a third party in a specified amount and continually guaranteeing the payment of the original and future credits, and the continuance or renewal of liability therefor, to the extent of such specified amount, in proportionate sums by the subscribers, is both a letter of credit within sections 2858 and 2865 of the Civil Code, and an absolute guaranty within section 2795 of that code; and the subscribers are not entitled to notice of the credits and liabilities thereafter given or incurred, nor to notice of the acceptance of the guaranty.

ID.—CONSTRUCTION OF CODE—COMMUNICATION OF CONSENT—ABSOLUTE GUARANTY—GENERAL AND SPECIFIC PROVISIONS—CONFLICT. The general provisions of section 1565 of the Civil Code, in the title on contracts, requiring the consent of parties to a contract to be "communicated by each to the other," have no application to the special contract of absolute guaranty to another person

of the debt or default of a third person, provided for in the separate title upon guaranty; but the conflicting provision of section 2975 in the latter title, dispensing with notice of the acceptance of an absolute guaranty, must control upon that subject.

ID.—LIABILITY OF GRANTOR—CONSTRUCTION OF GUARANTY.—The rule that a guarantor is entitled to stand upon the strict terms of his contract, imports merely that his liability is not to be extended by implication beyond its terms as ascertained by the same rules of construction which apply to other written instruments.

ID.—REASONABLE INTERPRETATION—AMBIGUITY OF TERMS.—The language used by the guarantor is to receive a fair and reasonable interpretation to effect the objects and purpose of the guaranty; and if it is fairly susceptible of two interpretations, either of which is within the spirit of the guaranty, the guarantor cannot say the guarantee was not justified in acting upon either, or that he should have acted upon one rather than the other.

ID.—ACCEPTANCE OF NOTE BY BANK—GUARANTORS NOT DISCHARGED. The acceptance by the bank of a note for the amount of an existing credit guaranteed, which did not pay the debt, or alter the relation of debtor and creditor, or extend the time of payment, but was payable immediately when executed, and was within the terms of the guaranty which, fairly interpreted, were broad enough to embrace any form of credit, or future liability, or continuance or renewal of liability from the debtor to the bank, did not operate to discharge the guarantors.

ID.—NOTE, WHEN NOT PAYMENT.—In the absence of an agreement that a note shall be taken in payment of the debt, or of evidence that such was the intention of the parties, the taking of a note for an existing liability does not constitute a payment or reduction of the amount of the debt.

ID.—EFFECT OF NOTE—ACTION UPON ORIGINAL DEBT.—A note, given for a debt, which is payable immediately, does not suspend the right of action upon the original debt; and suit may be brought thereon at any time, regardless of the note. The note is evidence of the existing debt, and does not change the amount or character of the liability.

ID.—ACCOUNTS OF BANK—CREDIT OF NOTE—CLOSING OF OVERDRAFT ACCOUNT.—The credit of the note upon the accounts of the bank merely for the purpose of closing the overdraft account upon its books, does not change the liability, or reduce the amount of credit received by the maker of the note from the bank. The real account of credit given was not closed by the footing thus made.

ID.—CONSTRUCTION OF AGREED CASE—"FURTHER CREDIT."—An agreed case, stating that after the date of the execution of the note and the crediting of the amount thereof against the over-

draft, all deposits made by its maker were applied to the payment of checks drawn thereupon, but that, after that date, "no further credit" was asked or given, is to be construed as meaning that no additional credit for overdrafts was asked or given, and not as importing that the liability for credit previously given ceased from that date.

Id.—Permission to Check against Deposits—Liability of Guarantors.—The permission of the bank to the maker of the note to draw checks against deposits subsequently made, which were not directed to be applied as payment upon the note, did not affect the liability of the guarantors for the amount of the credit evidenced by the note.

Id.—Credit Given to Corporation—Liability of Guarantors as Stockholders.—Where the guarantors were stockholders in a· corporation whose indebtedness to the bank to a specified amount, was guaranteed by them, and they did not in the guaranty limit their liability as stockholders of the corporation, the bank may not only recover against them upon the guaranty, but also upon their liability as stockholders for their proportionate share of the debt of the corporation to the bank. not exceeding in all the amount of the corporate liability.

Id.—Statute of Limitations—Note of Corporation—Liability of Stockholders for Original Credit.—In applying the statute of limitations to the liability of the stockholders, a note given by the corporation in renewal or continuance of an original credit given to the corporation for overdrafts, is to be disregarded, and the liability of the stockholders is to be deemed created or incurred only by the original credit to the corporation.

Id.—Overdraft Account—Deposits—Application of Payments.—Where the original credit to the corporation was for overdrafts allowed by the bank, the deposits made by the corporation from time to time, of which no application was made by either party, must be made by the court, as of the date of each of the several deposits, in payment, first of the interest then due, and the remainder in payment of the principal, evidenced by checks for the overdrafts earliest in date, irrespective of the statute of limitations thereupon.

Id.—Making of Note—Agreed Application of Payments.—The statute of limitations not having run against any items of the account at the time of the execution of the note, it was competent for the parties at that time to agree to the application of the deposits theretofore made, and the making and acceptance of the note for the amount agreed must be regarded as an agreement for the application of the deposits to the extinction of so much of the liability theretofore incurred as was not included in the note.

Id.—Charges of Monthly Interest—Payments by Bank—Additional Loan.—The charges by the bank for monthly interest upon the overdrafts, which were paid by memorandum checks

signed by the bank itself, were equivalent to an additional loan or advance of an amount equal to the monthly interest; and cannot affect the application of payments upon the general account to the unpaid interest.

ID.—SIMULTANEOUS DEPOSITS AND CHECKS—FINDING.—The mere fact that the amount of deposits and checks upon a given date were identical in amount, does not of itself conclusively prove that these were independent transactions not subject to the rule for the application of payments in the general account to the earliest items thereof; and the finding of the court to the contrary will not be disturbed upon appeal.

ID.—PRESUMPTION AS TO DEPOSITS AND CHECKS.—Deposits in a bank, being usually made before checks are drawn, in the absence of specific direction, are presumed to be applicable upon general account; and there is no presumption that such deposit was intended to be applied to a check that might thereafter be drawn.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Robert Y. Hayne, for Appellant.

The defendants, being liable for their guaranty for an amount proportioned to their shares in the corporation, ought not to be subjected to a double liability in an additional amount as stockholders. The guaranty cannot be extended by implication. This is a universal rule applicable to every variety of circumstances. (Brandt on Suretyship and Guaranty, sec. 79; *Pierce v. Whiting*, 63 Cal. 543; *John Hancock Mut. Life Ins. Co. v. Lowenberg*, 120 N. Y. 44.) The substitution of the note for the credit guaranteed discharged the sureties, independently of any injury resulting therefrom. (Civ. Code, sec. 2819, first part; *Page v. Krekey*, 137 N. Y. 314, 315; 33 Am. St. Rep. 731; *Bethune v. Dozier*, 10 Ga. 235; *Haden v. Brown*, 18 Ala. 641; *Miller v. Stewart*, 9 Wheat. 703; *Weir Plow Co. v. Walmsley*, 110 Ind. 246; *Paine v. Jones*, 76 N. Y. 278, 279; *United States v. Hillegas*, 3 Wash. C. C. 76; *Ryan v. Morton*, 65 Tex. 260; *Simonson v. Thori*, 36 Minn. 439; *Crescent Brewing Co. v. Handly*, 90 Ala. 488.) The substitution of a negotiable security for a book account is as much a material alteration as it would be to interline words of negotiability in a non-negotiable note. (*Haines v. Dennett*, 11 N. H. 180.) A negotiable note is more

beneficial to the creditor than a book account. (*Myers v. Welles*, 5 Hill, 464; *Andrews v. Marrett*, 58 Me. 540.) The fact that the appellant was a stockholder in the Capitol Packing Company does not dispense with the necessity of her consent to a change in her liability as guarantor. (*Pelton v. San Jacinto etc. Co.*, 113 Cal. 24, 25; 3 Thompson on Corporations, sec. 2928.) The guaranty not being an absolute or unconditional guaranty of a subsisting debt, but being conditional upon its acceptance thereof, and future action thereunder, notice of its acceptance must have been communicated to make it a binding contract. (Civ. Code, sec. 1565; *Adams v. Jones*, 12 Pet. 213; *Kincheloe v. Holmes*, 7 B. Mon. 7; 45 Am. Dec. 41; *Howe v. Nickels*, 22 Me. 176; *Kellogg v. Stockton*, 29 Pa. St. 460; *Coe v. Buehler*, 110 Pa. St. 366; *Central Sav. Bank v. Shine*, 48 Mo. 464; 8 Am. Rep. 112; *Taylor v. Shouse*, 73 Mo. 361; *Singer Mfg. Co. v. Littler*, 56 Iowa, 601; *Taylor v. Wetmore*, 10 Ohio, 495; *Hill v. Calvin*, 4 How. 231; *Tuckerman v. French*, 7 Greenl. 115; *Bradley v. Cary*, 8 Greenl. 234; *Taylor v. McClung*, 2 Houst. 24; *Oaks v. Weller*, 13 Vt. 110; 37 Am. Dec. 583; *Allen v. Pike*, 3 Cush. 238; *Craft v. Isham*, 13 Conn. 32; *Lee v. Dick*, 10 Pet. 482; *Patterson v. Reed*, 7 Watts & S. 144; *Beekman v. Hale*, 17 Johns. 139, 140.) The deposits after September 6, 1893, while the relation of debtor and creditor existed, were in legal effect payments thereupon; and the letting of them out again was in effect reloaning the money after it was paid, and discharged the guarantors. (*Eppinger v. Kendrick*, 114 Cal. 626; *Kiessig v. Alspaugh*, 91 Cal. 233; *People v. Chisholm*, 8 Cal. 29; *Everly v. Rice*, 20 Pa. St. 297; *Ruble v. Norman*, 7 Bush, 582; *Spurgeon v. Smytha*, 114 Ind. 453; *Springer v. Toothaker*, 43 Me. 381; 69 Am. Dec. 66; *Commonwealth v. Miller*, 8 Serg. & R. 452; *Nelson v. Williams*, 2 Dev. & B. Eq. 118.) The extension of time by the corporation did not extend the statute of limitations against the stockholders. (*Hunt v. Ward*, 99 Cal. 612; 37 Am. St. Rep. 87; *Winona Wagon Co. v. Bull*, 108 Cal. 1.) All items of the account more than three years prior in date to the commencement of the action were barred by limitation. (*Wells v. Black*, 117 Cal. 163; 59 Am. St. Rep. 162.) The bank has charged compound interest on the account, and having made such application of the interest it cannot be revoked for

any other application of payments thereto. (Civ. Code, sec. 1479; *Wendt v. Ross*, 33 Cal. 657; *Wright v. Wright*, 72 N. Y. 153; *Mayor etc. v. Patten*, 4 Cranch, 320; *Caldwell v. Wentworth*, 16 N. H. 318; *Hubbell v. Flint*, 15 Gray, 550; *Tomlinson Carriage Co. v. Kinsella*, 31 Conn. 268; *Treadwell v. Moore*, 34 Me. 115; *Feldman v. Gamble*, 26 N. J. Eq. 494.)   The principal being barred, the interest is barred also.   (*Jones v. Orton*, 65 Wis. 10; *Meyer v. Porter*, 65 Cal. 67.)   The credits growing out of particular transactions of deposits and checks, of the same amount on the same day, should not be applied as payment on prior indebtedness.   (*Suter v. Ives*, 47 Md. 540.)   Where money is received for a defined use it must be applied to that use, and not applied to the payment of previous indebtedness. (*Smuller v. Union Canal Co.*, 37 Pa. St. 70; *United States Bank v. Macalester*, 9 Pa. St. 482; *Taylor v. Cockrell*, 80 Ala. 238.) The payment of a precise amount applicable to a particular claim is irrefragable evidence that it was so intended.   (*Marryatts v. White*, 2 Stark. 91; *West Branch Bank v. Moorehead*, 5 Watts & S. 542; *Lauten v. Rowan*, 59 N. H. 215; *Robert v. Garnie*, 3 Caines, 15; *Seymour v. Van Slyck*, 8 Wend. 416, 417.) The law will not appropriate payments to uncollectible demands.   (*Stanley v. Westrop*, 16 Tex. 203; *Backman v. Wright*, 27 Vt. 187; 65 Am. Dec. 187; *Quigley v. Duffy*, 52 Iowa, 610; *Dunbar v. Garrity*, 58 N. H. 575; *Wright v. Laing*, 3 Barn. & C. 165; *Kuker v. McIntyre*, 43 S. C. 117.)   Nor to a claim barred by limitation.   (*Livermore v. Rand*, 26 N. H. 85.)

Page & Eells, and Page, McCutchen & Eells, for Respondent.

The guaranty was an independent agreement, and could not affect the liability of the stockholders for their proportionate share of the indebtedness of the corporation.   (*Morrow v. Superior Court*, 64 Cal. 384; *In re California Mut. Ins. Co.*, 81 Cal. 368; *Pelton v. San Jacinto Co.*, 113 Cal. 331; *Coburn v. Wheelock*, 34 N. Y. 440.)   The acceptance of the note did not discharge the guarantors, it being provided for by a reasonable construction of the guaranty.   (*Lawrence v. McCalmont*, 2 How. 426, 450; *Lafargue v. Harrison*, 70 Cal. 385; 59 Am. Rep. 416; *Pratt v. Matthews*, 24 Hun, 388; *People v. Breyfogle*, 17 Cal. 508; *Fifth Nat. Bank v. Woolsey*, 48 N. Y. Supp. 148; 31 Hun's App. Div. 61.)   Ambiguity should be resolved against

a surety or guarantor. (*Lawrence v. McCalmont, supra; Belloni v. Freeborn*, 63 N. Y. 383; 13 Am. & Eng. Ency. of Law, 250.) The taking of the note did not constitute a payment or novation of the debt, in the absence of proof of an agreement to the contrary. (*Dellapiazza v. Foley*, 112 Cal. 380; *Savings etc. Soc. v. Burnett*, 106 Cal. 514; *Comptoir d'Escompte v. Dresbach*, 78 Cal. 15; *Fifth Nat. Bank v. Woolsey, supra.*) The letter of credit and guaranty were absolute and unconditional in form, and required no notice. (Civ. Code, secs. 2795, 2865; *Union Bank v. Coster*, 3 N. Y. 204; 53 Am. Dec. 280; *Smith v. Dann*, 6 Hill, 543; *Douglass v. Howland*, 24 Wend. 50; Wade on Law of Notice, secs. 388, 401-05; *City Nat. Bank v. Phelps*, 86 N. Y. 484, 493; *Niles Tool Works v. Reynolds*, 38 N. Y. Supp. 1028; 4 N. Y. App. Div. 24.) After the nominal closing of the account of overdrafts by the note, it was competent for the parties to agree that future deposits should be checked out without additional credit, and the bank was not required to apply them in payment of the debt for the benefit of the sureties or guarantors. (*National Bank v. Peck*, 127 Mass. 300; 34 Am. Rep. 368; *Glazier v. Douglass*, 32 Conn. 393; *Brewer v. Knapp*, 1 Pick. 332; *Upham v. Lefavour*, 11 Met. 174; *People's Bank v. Legrand*, 103 Pa. St. 309; 49 Am. Rep. 126; *Strong v. Foster*, 17 Com. B. 201; *Voss v. German Bank*, 83 Ill. 599; 25 Am. Rep. 415; *Second Nat. Bank v. Hill*, 76 Ind. 223; 40 Am. Rep. 239; *National Bank v. Smith*, 66 N. Y. 271; 23 Am. Rep. 48.) All deposits on this new account were loans to the bank to be repaid by honoring the depositor's checks. The bank was "not entitled to debit his account with any payments except such as are made by his order and direction." (*Janin v. London etc. Bank*, 92 Cal. 22; 27 Am. St. Rep. 82; *Crawford v. West Side Bank*, 100 N. Y. 50; 53 Am. Rep. 152; Morse on Banks and Banking, sec. 289.) The three years' period rules as to the limitation of the liability of stockholders, and not the two years' period upon items of an open account, though the latter was available to the corporation, if it had not executed the note. (*Green v. Beckman*, 59 Cal. 545; *Wells v. Black*, 117 Cal. 157; 59 Am. St. Rep. 162; *Bank v. Pacific Coast etc. Co.*, 103 Cal. 594; *Hunt v. Ward*, 99 Cal. 614; 37 Am. St. Rep. 87; *Moore v. Boyd*, 74 Cal. 167.) The application of payments,

first to the interest, and then to the earliest items of the principal was correct.   (*Redington v. Cornwell,* 90 Cal. 49, 64.)

HARRISON, J.—The defendants in the above-entitled cause (with others) executed and delivered to the plaintiff, September 30, 1891, the following instrument:

"To the London and San Francisco Bank, Lt'd, San Francisco, California:

"You will please give credit to.the Capitol Packing Company for a sum of money in United States gold coin not exceeding the amount of one hundred thousand ($100,000) dollars; and as said packing company contemplates a course of future dealing with you, you will please continue the said credit, or, if it should be reduced or satisfied by payments made by said packing company, renew the same from time to time for said amount, or any less sum, or otherwise keep the said credit permanently up to the limit as aforesaid, or any less amount.

"And these presents shall be deemed to be, and shall constitute to you, a continuing guaranty by each of us in the several proportions stated below, in reference to, and embracing, the original credit hereby authorized and all future liabilities of said packing company to you under said original credit, and under such successive transactions with you as shall either continue its liability or from time to time renew it; and such guaranty shall remain and be operative until all present or future credit or credits given by you as aforesaid, not exceeding the said limited amount, shall be fully paid, subject to our legal right to revoke the same in writing at any time as to any transactions occurring after such revocation.

"The subscribers hereto do hereby severally guarantee the said credits to the amount of one hundred thousand (100,000) dollars, in the following proportions, namely: . . . . Thomas Cole, for another twenty-five six-hundredths (25-600) part thereof; Abby M. Parrott, for another one hundred and sixty-five six-hundredths (165-600) part thereof.

"This guaranty shall bind each subscriber for his said proportion of said total credit (until after such revocation by him), notwithstanding some part of said total credit shall not be hereby guaranteed.

"Dated San Francisco, September 30, 1891."

October 5, 1891, the Capitol Packing Company opened an account with the plaintiff, and thereafter, until August 30, 1894, made deposits of moneys for its said account, drew checks against the same, and received advances by way of loans from said bank, which said advances were, by the said packing company's agreement with said bank, to draw interest, payable monthly, at the rate of seven per cent per annum. In July, 1893, the San Francisco Clearing House, of which the plaintiff was a member, promulgated a rule for the government of its members, that they should not allow overdrafts on the part of their customers; and for the purpose of complying with this rule the Capitol Packing Company, at the request of the plaintiff, delivered to it on the sixth day of September, its promissory note for the sum of $73,000, bearing date August 31, 1893, and payable one day after date. At that time the books of the bank showed an indebtedness on the part of the packing company of $72,899.61. This note was not accepted by the bank as payment, but its amount was placed upon the credit side of the packing company's account, and was so entered for the purpose of closing on its books the overdraft of the packing company, under the aforesaid rule of the clearing house. A balance was struck in the account, and the difference, viz., $100.39, was carried to the credit column of the account, the account was continued upon the books, and the packing company continued to make deposits and draw checks against the same until August 30, 1894, when it was finally closed. On July 31, 1895, the total amount due to the bank, as shown by the accounts upon its books, was $78,110, being the aforesaid sum of $73,000 and interest thereon for one year. An agreed case containing the above facts and others hereinafter named was submitted to the superior court for its determination, the plaintiff claiming therefrom a right of recovery against the defendants, and they claiming to be under no liability by reason thereof. The superior court rendered its judgment in favor of the plaintiff, from which the present appeal has been taken.

1. The instrument of September 30, 1891, is both a letter of credit and a guaranty. The first portion thereof is a written instrument addressed by the appellants to the respondent,

requesting the latter to give credit to the Capitol Packing Company, and thus falls directly within the terms of section 2853 of the Civil Code; and in the subsequent portion thereof they guarantee the said credit to the amount of $100,000, in certain specific proportions, and declare that the same shall be a continuing guaranty by each of them in these proportions, until the credit that may be given shall be fully paid. Regarded as a letter of credit, the terms of the instrument do not require any notice of the credit thereafter given, nor can the necessity of giving such notice be implied from its terms; and under section 2865 they became liable for such credit without notice to them. Their guaranty of the credits that might be given thereafter contains no limitation and is unconditional. It is not an offer to guarantee—its language being that they "do hereby severally guarantee the said credits"—but is an absolute guaranty, and, under section 2795 of the Civil Code, became binding upon them without any notice of acceptance. The provisions of section 1565 of the Civil Code, cited by the appellants, requiring the consent of parties to a contract to be "communicated by each to the other," has no application to a contract by which one person makes an absolute guaranty to another of the debt or default of a third person. It is a cardinal rule of statutory construction that specific provisions upon a particular subject control general provisions for the class to which that subject belongs. (Endlich on Interpretation of Statutes, sec. 399.) Section 1565 of the Civil Code refers to contracts in general, and is found in title I, of part II of that code, while the sections relating to "Guaranty" are contained in title XIII, of part III of the same code. Section 4481 of the Political Code declares: "If the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all matters and questions arising out of the subject matter of such title."

It is claimed by the appellants that the acceptance by the bank of the promissory note for $73,000 was such an alteration of the relation between it and the packing company as to discharge the guarantors, and in support thereof they invoke the oft-cited rule that a surety or a guarantor is entitled to stand upon the strict terms of his contract. When it is said that a

guarantor is entitled to stand upon the strict terms of his guaranty, nothing more is intended than that he is not to be held liable for anything that is not within the express terms of the instrument in which his guaranty is contained; that his liability is not to be extended by implication beyond these limits, or to other subjects than those expressed in the instrument of guaranty. But for the purpose of ascertaining the meaning of the language which he has used, and thus determining the extent of his guaranty, the same rules of construction are to be applied as are applied in the construction of other written instruments. His liability is not to be extended by implication beyond the terms of his guaranty as thus ascertained. The language used by him is, however, to receive a fair and reasonable interpretation for the purpose of effecting the objects for which he made the instrument, and the purpose to which it was to be applied. If this language is fairly susceptible of two interpretations, either of which is within the spirit of the guaranty, he is not at liberty to say that the person to whom it is given was not justified in acting upon either, or that he should have acted upon one rather than the other. (Civ. Code, sec. 1654; *Bell v. Bruen*, 1 How. 169; *Lawrence v. McCalmont*, 2 How. 426; *Gates v. McKee*, 13 N. Y. 232; 64 Am. Dec. 545; *Powers v. Clarke*, 127 N. Y. 417; *Pratt v. Matthews*, 24 Hun, 386; *Smith v. Molleson*, 148 N. Y. 241; *Lefargue v. Harrison*, 70 Cal. 380; 59 Am. Rep. 416.)

The taking of the note by the bank did not discharge the appellants from their liability upon the guaranty unless the obligation which they had guaranteed was thereby changed. By the terms of the instrument of guaranty the bank was to give to the packing company "credit" to the amount of $100,000, and to "continue the said credit," or, if it should be "reduced or satisfied by payments," renew the same, or otherwise keep the said "credit" permanently up to the limit aforesaid, or any less amount; and the signers thereof agreed that the instrument should be a continuing guaranty in reference to and embracing the original credit thereby authorized, "and all future liabilities of said packing company under said original credit," and under such successive transactions as shall either "continue its liability, or from time to time renew it," until all present or future

credit or credits "shall be fully paid." The instrument does not designate the form in which the credit should be given, and its language is broad enough to embrace any form of credit which might be agreed upon between the bank and the packing company; nor is there any language therein which limits the guaranty, or the credit to be given, to the form which might be originally adopted, or to preclude the bank and the packing company from the right to change the form of such credit, or from adopting at the same time different forms of credit without impairing the guaranty. It may be conceded that if after the bank had given credit to the packing company by way of an open account for its overdrafts, payable on demand, it had accepted a promissory note therefor by which its right to demand immediate payment would be postponed to a future day, the guarantors would have been discharged, since in that case the contract guaranteed by them would have been changed by giving time to the debtor and preventing them from taking up the debt and immediately suing the packing company. It is stated, however, in the agreed case that the note was not taken by the bank as payment, and, therefore, the original credit given to the packing company was not thereby "reduced or satisfied." In the absence of an agreement to that effect, or evidence that such was the intention of the parties, the taking of a note for an existing liability does not constitute a payment of the debt. (*Dellapiazza v. Foley*, 112 Cal. 380; *Grangers' Bank v. Shuey* (Cal. Dec. 15, 1898); 17 Cal. Dec. 1.) In the present case, the note was not delivered to the bank until after its date, and was therefore payable immediately, and the bank could at any time bring its action upon the original overdrafts.

The giving of the promissory note was a transaction between the bank and the packing company which at least had the effect to "continue" its liability for the amount of its previous overdrafts, and was within the express terms of the guaranty. It was evidence of the extent of the credit existing at that time, but did not change the amount or character of the liability. If, instead of taking the note, the bank had at that time sued the packing company and obtained judgment against it for the amount of its overdrafts, the guarantors would not have been thereby discharged, and the taking from it of a written agree-

ment to pay the amount of the overdraft can have no greater effect in discharging them. There was but one account opened with the bank by the packing company, and this account was not finally closed until August 30, 1894; and the entry of the amount of the note to the credit of the packing company upon this account was made merely for the purpose of closing the "overdraft" upon its books, but did not change the liability of the packing company, or reduce the amount of the credit which it had received from the bank. An account is not closed at each time a footing is made and the balance carried to another column. In support of these propositions, the following authorities may be consulted: *Bush v. Crilchfield,* 5 Ohio, 109; *Wise v. Miller,* 45 Ohio St. 388; *Fifth Nat. Bank v. Woolsey,* 31 N. Y. App. Div. 61; *Norton v. Eastman,* 4 Greenl. 521; *Lennox v. Murphy,* 171 Mass. 370; *London etc. Bank v. Bandmann,* 120 Cal. 220; 65 Am. St. Rep. 179.)

It is stated in the agreed case, after reciting the making of the aforesaid note and crediting its amount against the overdraft: "After that time, viz., on and after September 6, 1893, the company continued to make deposits and to check against the same as is shown by the statement hereto annexed, marked 'Exhibit 2.' But after September 6, 1893, no further credit was asked by or given to the packing company. All deposits so made were applied by the bank to the checks drawn after the date last mentioned, until August 30, 1894, when the said account was finally closed." Upon this statement it is contended by the appellants that their liability as guarantors ceased September 6, 1893; that as after that date the bank gave no further credit to the packing company, the liability of the guarantors ceased at that date. We cannot assent to this construction of the above clause. The argument of the appellants is drawn from what we deem a misconstruction of the language used in the agreed case. The statement that after September 6th no further credit was given to the packing company is not equivalent to a statement that credit was not given to it after that date. The word "further" as here employed, is an adjective, used in the sense of "additional," limiting "credit," and is not to be construed as an adverb of time, qualifying the word "given"; and the phrase is to be construed as

meaning that after that date the bank gave no credit to the packing company beyond, or in addition to, the amount of the note. The sentence itself is introduced by the restrictive connective "But," and its apparent purpose is to limit the statement in the previous sentence that after that date "the company continued to make deposits and to check against the same," by declaring that, notwithstanding the checks drawn against the deposits, they did not of themselves result in giving any credit to the packing company. This construction is consistent with the fact, appearing upon the face of the account, which is referred to in the sentence, that after that date there were no further overdrafts—the deposits being at all times in excess of the checks—and also harmonizes with the effect which we hold is to be given to the transaction of accepting the note and placing its amount to the credit of the packing company's account.

Permitting the packing company to draw checks against the deposits made by it after September 6, 1893, did not affect the liability of the guarantors. The moneys so deposited were not directed to be applied as payments upon the note, and in the absence of any direction the bank was not required to make such application. A bank which holds the note of its customer is not required at its maturity, or thereafter, to apply thereon moneys subsequently deposited by the customer, and an endorser or surety upon the note is not discharged by its omission to make such application. (Morse on Banks and Banking, sec. 562; *First Nat. Bank v. Peltz,* 176 Pa. St. 513; 53 Am. St. Rep. 686; *National Mahaiwe Bank v. Peck,* 127 Mass. 298; 34 Am. Rep. 368; *Strong v. Foster,* 17 Com. B. 201.) And if the bank was not required to make such application, its payment of checks drawn subsequent to the deposits was not a reloaning to the packing company of money that should have been applied toward the payment of the note. As we hold that the "credit" which was guaranteed did not cease on the 6th of September, but continued from the time it was opened with the bank in October, 1891, it is immaterial, so far as the guarantors are concerned, whether the deposits made after that date were applied in reduction of the amount of the note, or in payment of checks subsequently drawn. The liability of the packing company

which they guaranteed was whatever amount of credit less than $100,000 might at any time exist in favor of the bank, whether in the form of an open account for overdrafts, or in the nature of bills receivable. As between the bank and the packing company, all the payments of its checks by the bank upon overdrafts constituted "credit," and all of the deposits by the packing company were payments to be applied in "reducing or satisfying" that credit, and whatever amount of such credit remained unpaid was within the terms of the guaranty.

2. The Capitol Packing Company is a corporation organized under the laws of this state, with a capital stock divided into 600 shares, of which 595 were issued, and during all the times in which the aforesaid liability of the corporation was incurred the appellant, Abby M. Parrott, was the owner and holder of 165 shares of said stock, and the appellant, Thomas Cole, of 25 shares. The plaintiff claims, in addition to a recovery upon the guaranty of the appellants, the right to recover from them respectively, as stockholders, their proportion of the aforesaid corporate obligation, and the superior court rendered judgment in its favor in accordance with this claim. The appellants contend that their guaranty was only a collateral security for their liability as stockholders; that their liability thereon was commensurate with their liability as stockholders, and that the court was not authorized to render judgment against them in their double capacity.

In the agreed case the liability of the packing company to the plaintiff is stated to be $78,110, and it is stated that the plaintiff claims the right to recover from Mrs. Parrott upon her stockholder's liability the sum of $21,844.32, and upon her liability as guarantor the sum of $10,922.16; and from Mr. Cole upon his liability as stockholder the sum of $3,309.75, and upon his guaranty the sum of $1,323.89. The aggregate amount of the judgments against the defendants is less than the agreed amount of the corporate liability, but the judgments do not specify the amounts thereof rendered against the appellants upon their respective liabilities as guarantors and as stockholders. No exception, however, is made upon this ground, nor do the appellants claim that the judgment against them is incorrect in amount—their claim being that by reason of the guar-

anty they are not liable in any amount as stockholders. The guaranty does not, however, contain any reference to the liability of the signers as stockholders, and, inasmuch as such liability is distinct from that arising upon their contract, if they had intended not to be bound as stockholders they should have caused words of release or limitation to be inserted in the guaranty. Their liability as stockholders existed by virtue of the statute while their liability as guarantors was purely a matter of contract between them and the plaintiff, and the plaintiff had the right to demand the guaranty, in addition to their liability as stockholders, as a condition upon which it would give credit to the corporation. There was no connection between the two, or dependence of one upon the other, and, in the absence of any agreement to that effect, the plaintiff is not to be deprived of the right to enforce their statutory liability. No inference of this nature is to be drawn from the similarity between the number of shares of stock held by the appellants, and the proportion of the credit which they guaranteed. In fact, their liabilities under the two obligations are not the same—that as guarantors being for a certain number of six-hundredths of the credit, while as stockholders they were liable for that number of five hundred and ninetieths.

The plaintiff is, of course, not entitled to recover from the defendants whether as guarantors or as stockholders, or in both capacities, more than the amount of the corporate liability, but, as it appears from the record that the aggregate amount of the judgments is less than the agreed amount of the corporate liability, we cannot say that the record discloses any error in this respect. It is also stated in the agreed case that some stockholders did not sign the guaranty, and that some of the guarantors were not stockholders. The case also shows that the defendants in the action had 290 shares of the stock, but it does not appear that any of the guarantors, other than the defendants, were stockholders.

It is stated in the agreed case that the defendants shall be considered as having pleaded the statute of limitations upon any other matter than the guaranty, and appellants contend that their liability as stockholders is barred by this statute. The liability of a stockholder is an obligation created by stat-

ute, and, under section 359 of the Code of Civil Procedure, is barred unless the action thereon is commenced within three years after the cause'of action accrues. (*Green v. Beckman,* 59 Cal. 545; *Moore v. Boyd,* 74 Cal. 167; *Wells v. Black,* 117 Cal. 157; 59 Am. St. Rep. 162.)  It is unnecessary to consider the proposition presented by the appellants, that if the liability of a corporation is barred by the statute the stockholders may avail themselves of that fact as a defense to their own liability, since in the present case the liability of the packing company was not barred.  Before the statute had run against its liability it made its written acknowledgment thereof and promised to pay the same, and thus prevented the bar of the statute.  The giving of this note had the effect to preserve its liability until the maturity of the note.  The plaintiff's claim against the appellants as stockholders is not upon the note, but upon the liability originally created by reason of the advances made to the corporation.  We have seen that the giving of this note did not affect the liability of the appellants upon their guaranty, since it did not affect the original liability of the corporation, and for the same reason it did not affect their liability as stockholders.

Neither is their liability as stockholders barred by the three years' statute.  The account with the packing company was opened October 5, 1891, and from that date until September 5, 1893, deposits were made by the packing company, from time to time, and its checks paid by the bank.  Section 1479 of the Civil Code, providing for the application of payments, declares: "3. If neither party makes such application within the time prescribed herein, the performance (*i. e.,* the payment) must be applied to the extinction of obligations in the following order: 1. Of interest due at the time of performance; 2. Of principal due at that time."

The superior court acted in accordance with this rule, and held that the deposits of the packing company should be applied, first, to the interest due at the time of making the several deposits, and next to the payment of the checks earliest in time, and that the application should be made as of the date of the several deposits, irrespective of the time that had elapsed between the earliest items and the commencement of the action.

The appellants claim that the court thus acted in disregard of their plea of the statute of limitations; that under this plea the court was not at liberty to apply any of the deposits in discharge of advances made more than three years prior to the time the application was made; that the application of the deposits, whether made by the court or the creditor, cannot be made after three years from the time that the liability accrued. We cannot assent to this proposition. Under section 462 of the Code of Civil Procedure the plea of the statute of limitations is to be deemed "controverted" by the plaintiff, and whatever will defeat its effect may be shown upon the trial. The right to a correct application of payments is one of the elements in the plaintiff's right of action, and he is not to be deprived of the exercise of that right by a delay in bringing his action on for trial. The application of payments which is made by the court is to be made "in such a manner, in view of all the circumstances of the case, as is most in accordance with justice and equity, and will best protect and maintain the rights of both parties." (*Murdock v. Clarke*, 88 Cal. 390.) The circumstances which are to guide the court may have arisen since the payment was made, but the application when made relates to the time of the payment. There could be no propriety in applying a payment to the discharge of an obligation incurred subsequent to the time when the payment was made.

It is next contended by the appellants that under their plea of the statute their liability as stockholders is limited to that portion of the corporate liabilities which were incurred subsequent to August 16, 1892—the agreed case having been filed August 15, 1895. At the time of the execution of the note of September 5, 1893, the statute of limitations had not run against any of the items of the account; and the parties thereto could at that time agree upon the mode and extent to which the previous deposits by the packing company should be applied in the extinction of its liability for the advances; and the making and acceptance of the note for an amount agreed upon between them must be regarded as an agreement, or acquiescence, on the part of the packing company, in their application to the extinction thereby of so much of the liability theretofore incurred as was not included in the note.

The appellants urge, however, that the plaintiff had, prior to that date, made an appropriation of a portion of the deposits to the payment of interest at the end of each month, and that the appropriation having once been made it was irrevocable, and that a different appropriation thereafter was unauthorized. This claim rests upon these facts: At the opening of the account the packing company agreed to pay interest upon the advances made to it, monthly, at the rate of seven per cent per annum. This interest upon overdrafts was, according to the usual course of business, paid by a memorandum check signed by the bank itself, and a list of the checks so drawn was handed to the packing company whenever its book was balanced. In the account upon the books of the bank these items of interest appear under date of the last day of each month, and amount to a little over $7,000. It is claimed that by this mode the bank elected to allow the interest to compound and not to apply any subsequent deposits to its payment. Instead, however, of being an application of the deposits, this action of the bank was in the nature of an additional loan to the packing company. It was equivalent to advancing to it the amount of the interest for the previous month, upon its check therefor, in the same mode that it would advance money upon its check for any other purpose. Deposits subsequently made were not applied by the bank to the payment of this interest, but were placed to the general credit of the packing company in its account upon the books of the bank.

From the copy of the account annexed to the agreed case it appears that upon many occasions the amount of the deposits and of the checks drawn by the packing company upon the same day were identical, and from this fact the appellants contend that it should be held that these deposits and checks were parts of the same transaction, and were transactions independent of the general account between the packing company and the bank, and consequently the deposits so made should not be applied to the discharge of any of the earlier items of the account. There is nothing, however, in the record tending to show that these were independent transactions except the identity of amount and date, and these items only constitute evidence from which an inference might be drawn that they were

parts of independent transactions. They are not conclusive of the fact, and as the superior court has not drawn this inference, but its judgment has impliedly found the contrary, we must accept its finding as conclusive. It may be added that in the dealings between a bank and its customers the deposit is usually made before the checks are drawn, and, in the absence of some specific direction, there would be no presumption that a deposit was intended to be applied to a check that might be thereafter drawn.

The judgment is affirmed.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in Bank denied.