[Civ. No. 2567.   First Appellate District, Division One.—July 12, 1919.]

# SONOMA COUNTY NATIONAL BANK (a Corporation), Respondent, v. R. M. SKINNER, Appellant.

[1] Pledges—Collateral Security for Past and Future Indebtedness—Action on Pledged Note—Evidence.—Where a promissory note of a third party is pledged as collateral security for the payment of money presently borrowed from the pledgee, as evidenced by the promissory note of the borrower, and also for the repayment of whatever prior amount the borrower owed such pledgee and all subsequent advances, it is not error in an action by such pledgee to recover on the pledged note to refuse to permit the maker of such pledged note to show the balance due on the original note of the borrower, there being no attempt to prove that the total indebtedness of such borrower to the pledgee is less than the amount for which the maker of the pledged note is sued.

[2] Promissory Note—Acceptance of—Extinguishment of Obligation.—The acceptance of a promissory note does not extinguish the old obligation in the absence of an agreement to that effect.

[3] Pledges—Promissory Note as Collateral Security—Bona Fide Holder.—Where a note is taken as collateral security for future advances, the holder can assume a *bona fide* character only to advances made previously to the maturity of the instrument.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. affirmed.

The facts are stated in the opinion of the court.

W. H. Morrissey and Frederick H. Shipper for Appellant.

Reuben G. Hunt for Respondent.

WASTE, P. J.—Defendant appeals from a judgment in favor of plaintiff, upon a directed verdict, for money due on a promissory note.

On November 28, 1914, C. F. Fury, being at the time already indebted to plaintiff, borrowed from it the sum of

2. Promissory note or bill of exchange as "security," note, Ann. Cas. 1914D, 626.

3. Holder of bill or note as collateral security as *bona fide* holder, note, 31 L. R. A. (N. S.) 287.

five hundred dollars.   He executed and delivered to it his promissory note for that amount.   As collateral security for the payment of this note, for what he already owed, and for future advances, he transferred to the bank a claim, for the sum of four hundred dollars, held by himself against the Helling estate, and transferred to it by indorsement the note in suit, executed to Fury by defendant.   This note was dated November 27, 1914, and was payable May 27, 1915.

Some time thereafter the Helling estate paid to the banker the sum of four hundred dollars, the amount of Fury's claim against it.   This money the bank applied on the Fury note for five hundred dollars, leaving a balance of one hundred dollars due thereon, for which Fury, at the time, executed a new note.   The bank then canceled the five hundred dollar note, and credited it on the books of the bank as paid.   It marked as "paid" and delivered the canceled five hundred dollar note to Fury.

Subsequent to the transfer of the Skinner note by Fury to the bank a number of transactions were had between them, resulting in the giving by Fury of several promissory notes.   According to the uncontradicted testimony of the plaintiff's cashier, it was the custom of the parties that these notes "would run for a period of time, and were then afterward canceled and new notes taken."   It appears from the record to be equally well established that these dealings amounted to one continuous transaction, and that the collateral, pledged at the time Fury obtained the advance of five hundred dollars, was held by the bank as security for the repayment of the varying aggregate amounts of Fury's indebtedness.

The present action was commenced on February 23, 1917, by plaintiff, to collect the sum of four hundred dollars, alleged to be due on the note, the purpose being to thus foreclose on the collateral to that extent, and apply the amount on the total sum claimed by the bank to be due from Fury, amounting at that time to approximately one thousand two hundred dollars, including the one hundred dollar note given on the surrender of the five hundred dollar obligation, as before stated.

After the suit was instituted, but before the trial, the bank took from Fury a new note, dated April 19, 1917, for one hundred dollars, marked the old note for that amount "paid,"

and returned it to Fury. It does not appear when the new obligation matured. On the trial the defendant sought to ascertain when this last note became due, but the court sustained a general objection to the testimony. In seeking to show the maturity and disposition of this note, defendant was attempting to support the allegation of his answer, and the contention made here, that plaintiff was only entitled to hold the note of defendant as collateral for the one hundred dollars remaining unpaid on the original five hundred dollar note, and that by the terms of the new note for one hundred dollars, executed after suit brought, the time of payment had been extended and the suit, therefore, prematurely brought.

[1] This contention, sound, if resting on proper foundation, loses its force in the present case, in view of the established fact that the note sued upon was collateral, not only for the payment of the five hundred dollars, obtained from the bank by Fury at the time it was pledged, but also for repayment of whatever prior amount Fury owed the bank and all subsequent advances. At the time of the trial his total indebtedness amounted to about one thousand two hundred dollars. Defendant did not attempt to prove, and apparently does not contend, that the indebtedness of Fury to the bank was different, or any less, than as testified to by the bank's cashier. We are, therefore, unable to find any harm done to defendant by this particular ruling of the court. (*San Luis Obispo Co. Bank* v. *Greenberg,* 116 Cal. 467, 470, [48 Pac. 386].)

The defendant, on cross-examination of the bank cashier, asked if it were not a fact that at the time of the trial the plaintiff was holding the Skinner note as security for the payment of the note for one hundred dollars (the balance unpaid on the five hundred dollar note) dated April 19, 1914. An objection, made by plaintiff, which we do not approve as being sufficient, was sustained by the court, and appellant specifies the ruling as error. He has no ground for complaint, for subsequent to the objection and ruling it appeared from the witness' testimony that the said note for one hundred dollars was included in the indebtedness of Fury to the bank, and was regarded merely as an unpaid balance on the original obligation for which the note in suit was pledged as collateral. [2] The bank does not

appear to have received the one hundred dollar note with any intention or agreement that it should constitute payment of the old obligation. In the absence of such agreement it did not extinguish the debt. (*Bridge* v. *Connecticut etc. Co.*, 167 Cal. 774, [141 Pac. 375].)

At the conclusion of plaintiff's case defendant offered testimony to show that the plaintiff bank at no time notified, or advised, him that it held the note in suit, and that long after the same became due, and without knowledge of the bank's claim, defendant paid and discharged his note by payment to Fury, the payee thereof. Plaintiff objected to this testimony and the objection was sustained by the court. Respondent's cashier had testified as to the advances made to Fury after the note in suit was pledged as collateral, "I am not sure of the date of the other advances, but I think there have been subsequent to the maturity of that note." Appellant contends that to entitle respondent to the privilege of a holder in due course, the burden was on respondent to show that as to those "other advances" they were made prior to the maturity of the collateral note.

[3] "Where a note is taken as collateral security for future advances the holder can assume a *bona fide* character only as to advances made previously to the maturity of the instrument." (8 C. J. 477; *Texas Banking etc. Co.* v. *Turnley,* 61 Tex. 365.) The Skinner note was available to the bank as security, therefore, for the indebtedness of Fury, which began before the collateral note was given, or was thereafter incurred before its maturity, and which indebtedness continued unpaid at the time suit was commenced.

As we understand the offer made by defendant as his defense in the court below, however, we fail to perceive how the fact that he had paid the note to Fury after maturity, without knowledge of the bank's claim, would establish when or under what circumstances any of the advances were made by plaintiff to Fury. If the record brought here does not properly convey the real offer, appellant is unfortunate in not having correctly enlightened this court. If the record is correct, appellant's offer was not sufficiently comprehensive to make the point on which he relies.

On the record as we review it, the lower court was correct in directing the verdict as it did. There was nothing

in the transactions between the bank and Fury indicating that the note of one hundred dollars was taken in payment of the indebtedness remaining on the five hundred dollar note after crediting thereon the Helling claim other than the cancellation and surrender of the old note. This, in the light of the evidence as to the circumstances of the giving of the new note, was insufficient to require a conclusion that there was any agreement to the effect that the new note was received by way of payment. (*Bridge* v. *Connecticut etc. Co.,* 167 Cal. 774, [141 Pac. 375].) There was, therefore, nothing to submit to the jury.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.