[Civ. No. 279. Fourth Appellate District.—April 7, 1930.]

FIRST NATIONAL BANK IN FRESNO (a National Banking Association), Appellant, v. J. E. CORCORAN, Respondent.

Cosgrave & Barstow for Appellant.

Theodore M. Stuart for Respondent.

MARKS, Acting P. J.—Appellant filed two actions in the court below to recover judgments on two checks. One was dated August 15, 1927, drawn by respondent, by O. C. Woodworth his agent, upon the Franklin Trust & Savings Company of Pittsburgh, Pennsylvania, a banking corporation, to E. Y. Foley, in the sum of $2,179.80. The other check was identical in form, except that it was dated August 16, 1927, and was drawn for the sum of $1,500. The two cases were tried together, and while there are two judgments from which appeals were taken, they are presented here upon a single record. As the facts, except as we have noted, are identical, we will consider the two cases together.

Appellant was a banking corporation with its principal place of business in the city of Fresno, California. Respondent was a resident of Pittsburgh, Pennsylvania, where he was engaged in the wholesale fruit and produce business. E. Y. Foley was a resident of Fresno, California, where he was engaged in the business of buying grapes and other fruits and shipping them to the eastern market. During the summer and fall of 1927 Foley and respondent were engaged in the business of buying and shipping grapes to the eastern market upon a ''joint account.'' Respondent furnished the money to carry on the operations and the two were to divide the profits or losses between themselves. O. C. Woodworth was respondent's agent in Fresno, who drew the checks in question, as well as others, to furnish Foley with money with which to purchase grapes from the growers. Respondent testified that the checks so drawn by Woodworth had to be ''O. K.'d'' by respondent in Pittsburgh before the bank there would pay them. The checks had nothing on them to indicate this requisite, and respondent further testified that the bank in Pittsburgh was not informed of it, so we can give no weight to this statement.

The two checks in question were in the usual form of bank checks. On the face of each were letters and figures which were shown to refer to the numbers of refrigerator-cars used by railroads in transporting fresh fruit to the market. Woodworth gave the checks to Foley on their respective dates, and on these dates he (Foley), after indorsing them, deposited them to his personal checking account in the appellant bank. Appellant credited the amounts of the checks to Foley's account and he checked against this balance, reducing the amount of his deposit to about $30 within three days. In the due course of business appellant sent the checks to the Pittsburgh bank, where they were presented for payment, which was refused, payment having been stopped by the respondent. They have not been paid. The slips used by Foley in depositing the checks in his account had printed upon them the following: ''In receiving checks on deposit, this bank assumes no responsibility for the failure of any of its direct or indirect collecting agents, and shall only be held liable when proceeds in actual funds or solvent credits shall have come into its possession. Under these conditions items previously credited may be charged back to the

depositor's account. In making this deposit the depositor hereby assents to the foregoing conditions." On September 1, 1927, appellant received notice that the checks had not been paid and immediately notified Foley of this fact. It made numerous efforts to collect from respondent. These checks were never out of the possession of appellant, or its correspondent banks, or its attorneys.

In November, 1927, Foley changed his account in the appellant bank from E. Y. Foley to the Foley Packing Co. On November 22, 1927, Foley, with Ben H. Arkelian and R. George as comakers, gave appellant their promissory note in the exact amount of the principal sum of the two checks. While interest payments were made on this note, no part of the principal has been paid. On the date of the note the checks were charged up to the account of the Foley Packing Co., and on the next day the Foley Packing Co. was credited with the amount of the note. The cashier of the bank testified that delay of a day in the entry of the credit of the principal of the note was due to the time necessary for the record of the deposit to pass through the regular machinery of the bank, and that the two entries resulted from the one transaction. He also testified that the debit and credit entries were made as a matter of bookkeeping for the convenience of the bank. Nowhere in the record before us is there any evidence that would raise the slightest intimation of an agreement between the makers of the note, or any of them, and appellant, or between respondent, or the makers of the note and the bank, or any of them, that the note was given in payment of the checks. On the other hand, appellant retained the checks and was persistent in its attempts to collect them from respondent.

The trial court found that the appellant was not the holder of the checks in due course, and for value, and that it had merely accepted the checks for collection, basing this finding on the printed portion of the deposit slips before quoted. It also found that the promissory note given by Foley, Arkelian and George was past due and ''That upon the delivery of said note to the plaintiff the plaintiff immediately entered the same as a deposit to the credit of the account of E. Y. Foley with plaintiff with the same force and effect as though Foley had deposited that amount of cash, and plaintiff thereupon charged against said account the amount

of said check and said interest with the same force and effect as though plaintiff had cashed a check drawn by Foley against said account. That plaintiff by its own voluntary conduct in handling said transaction with Foley and his comakers on said note, substituted said note for said check as items in Foley's account and thereupon title to and right of possession of said check passed to Foley.'' Upon these findings the trial court gave judgment for respondent. Appellant maintains that the findings are not supported by the evidence and are contrary to the evidence.

That the checks in question are negotiable instruments cannot be disputed. They were in writing, signed by the maker, contained an unconditional order to pay certain sums of money, were payable on demand, were payable to the order of Foley, and were drawn on the Pittsburgh bank (sec. 3082, Civ. Code). Neither can it be questioned that appellant was the holder of the checks in due course. They were regular on their face, they were not overdue and had not been previously dishonored. It had no notice of any infirmity in the instruments or defect in the title of Foley to them. It took them in good faith and for value (sec. 3133, Civ. Code). The only ground urged by respondent to uphold the findings of the court that the checks were not taken by appellant in good faith and for value, is the printed portion of the deposit slip which we have quoted. On August 16 and 17, 1927, the dates of the deposits of the two checks in question, Foley deposited about $22,000 with appellant. By August 19, 1927, he had checked out all of this money except about $30. Appellant paid this money out upon Foley's written order, which is as effective, as far as consideration is concerned, as though the money were paid to him in cash. The printed portion of the deposit slip reserved the right to appellant to receive the checks for collection only, and to charge them back to the depositor in case they were not paid. This was a right which appellant might, or might not, exercise as it chose. In this case it did not choose to charge them back to Foley, but attempted to collect them from respondent as it had the right to do.

Respondent maintains, in effect, that when Foley gave his note to the bank, the liability of respondent to appellant was satisfied and discharged. The situation in

which the parties were placed by giving this note was similar to the one discussed in the case of *London and San Francisco Bank* v. *Parrot,* 125 Cal. 472 [73 Am. St. Rep. 64, 58 Pac. 164]. It is well settled that a new obligation is not substituted for an old one unless there is an existing intent in the minds of the parties so to do (sec. 1531, Civ. Code).

As we have observed before, there is not only no evidence, but not even an intimation of evidence in the record tending to show any intent or agreement to substitute the obligation of the note for the checks. In the case of *Clark* v. *Berlin Realty Co.,* 33 Cal. App. 50 [164 Pac. 333, 335], the following was said:

"The main contention, however, and that which forms the substance of the defense interposed by the defendant, is that all of the indebtedness incurred by the Laundry Company to the bank and as evidenced by the several promissory notes was extinguished when the note for $14,500 was given on March 5, 1913, which was after the defendant had ceased to be one of the stockholders in the Laundry Company. It appeared in evidence that at the time the note for fourteen thousand five hundred dollars was made, the notes previously taken were delivered to the Laundry Company and marked 'paid.' The defendant urged and now insists that under the facts shown by the evidence, when the last note was made a novation was effected and under the agreement of the parties the new obligation extinguished the old debt. It has been held numerous times and by the decisions of this state that the taking of a promissory note from a debtor, or of a third party, will not extinguish the debt and create a new obligation, unless received by the creditor under an express agreement that it shall have that effect. It is further asserted in the authorities that there is not a presumption in favor of a note being received as payment under such circumstances; and where a note was given to take up another note, it was said that because the original note was surrendered and marked paid on its face, 'was not conclusive evidence of the extinguishment of the debt.' In the case of *Bonestell* v. *Bowie,* 128 Cal. 511 [61 Pac. 78], the text of the decision supports these statements, and a number of cases are therein collected and cited which are all to the same general point and effect. (See, also, *Gnarini* v.

*Swiss American Bank, etc.,* 162 Cal. 181 [121 Pac. 726].) In *London & San Francisco Bank* v. *Parrot,* 125 Cal. 472 [73 Am. St. Rep. 64, 58 Pac. 164], the court said: 'In the absence of an agreement to that effect, or evidence that such was the intention of the parties, the taking of a note for an existing liability does not constitute a payment of the debt.' ''

The cases of *Gnarini* v. *Banca Svizzera Americana,* 39 Cal. App. 200 [178 Pac. 532], *Sonoma County Nat. Bank* v. *Skinner,* 42 Cal. App. 202 [183 Pac. 464], *Spellacy* v. *Young,* 44 Cal. App. 174 [186 Pac. 368], and *Seaboard Nat. Bank* v. *Belden,* 47 Cal. App. 558 [190 Pac. 1045], support this doctrine. It is so well settled that further citation of authorities is unnecessary. The findings of fact which we have noted are not supported by the evidence.

Both judgments are reversed.

Beaumont, J., *pro tem.,* concurred.

Barnard, J., being disqualified, did not participate herein.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 5, 1930.