[Civ. No. 4540. Third Appellate District.—March 28, 1932.]

PAUL MARGOLIS, Appellant, v. LOS ANGELES-FIRST NATIONAL TRUST & SAVINGS BANK (a Corporation), Respondent.

Paul Loewenthal and William Berger for Appellant.

O'Melveny, Tuller & Myers and Pierce Works for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment against the plaintiff in an action upon an assigned contract for the payment of broker's commissions for the sale of real estate.

The defendant owned 312 lots in tracts 5320 and 5344 of Los Angeles. O. B. Smith was a duly licensed real estate agent. He was employed to sell these lots at specified prices. The contract provides for the payment of broker's commissions in the following language: "Said Smith shall receive as his sole commission that portion of the price obtained for each lot which is *in excess of the*

*list price,* . . . (in the following amounts and manner):
Fifty per cent (50%) of the down payment *received from
each purchaser of lots,* and fifty per cent (50%) of each
installment payment on the principal due from each pur-
chaser, until the full commission of said Smith has been
paid." The contract authorizes the payment of purchase
price of the lots as follows: "One-fourth ($\frac{1}{4}$) of the total
price payable in cash as the down payment, and . . . the
balance due under each of such sales shall be secured by
a trust deed under which the principal shall be payable
in equal quarterly, semi-annual or annual installments, all
to mature within three years from the date of sale."

Many of these lots were sold by the broker and con-
veyed to the purchasers pursuant to contract. A portion
of the purchase price was paid in each instance. The
unpaid portion was secured by trust deeds. Upon all cash
payments for lots, the agent was promptly paid his full
proportion of commissions earned as provided by the
contract. The balance of his commissions was to be paid
from "each installment payment due from each purchaser".
This balance of the commissions was conditioned and de-
pendent upon the future payment of the remaining portion
of the installments of purchase price of the lots by the
purchasers thereof. These purchasers defaulted in all pay-
ments which were secured by the trust deeds. The bank
was required to foreclose these trust deeds and repossess the
land. At the trustee's sale of the lots no bidders appeared
except the broker and the defendant. The broker bid "upon
each of the lots as the same was offered for sale, an amount
equal to twice the amount of the balance due appellant as
commissions". It is apparent these were not *bona fide*
bids. The bank was compelled to bid in the property. It
did so for the amount of the balance of the obligations
which remained unpaid. The defendant thus found itself
repossessed of the lots which it had employed the broker
to sell. The balance of the broker's claim for commissions
was assigned to the plaintiff. This suit was then commenced.
The trial court found that the broker had been fully paid
for all commissions which he had earned pursuant to the
terms of the contract, and rendered judgment accordingly.

The appellant contends that the purchase of the lots by
the respondent at the trustee's sale constituted a payment of

the balance due on the contracts of sale which entitles the broker to the remainder of his commissions.

We are satisfied from a construction of the language of the contract for broker's commissions that it was the intention of the parties that the broker was to receive one-half of that portion of the selling price in excess of the listed prices. This proportion of the commissions was due upon payment of the first cash installment. The contract provides that this first cash payment should equal one-fourth of the total selling price. There is no controversy over this part of the contract. The broker received all of his portion of his commissions. The contract then provides that the broker shall receive the remaining half of his commissions from "each installment payment due from each purchaser". No installment payments were subsequently made by any purchaser. Each of them defaulted. The language of the contract seems to preclude the theory that the parties intended to consider the foreclosure of a trust deed as equivalent to the payment of cash installments by the purchasers. It seems quite evident from the contract that the defendant merely agreed to pay broker's commissions dependent upon the exchange of its lots for cash. The construction of the contract above suggested seems reasonable and just. The broker obtained one-half of his commissions from the "down payment received". The balance was to be paid only from the cash installments which were to be subsequently made. The contract specifically recites that this balance was to be paid from "each installment payment". Clearly the unpaid portion of these commissions was dependent upon the future payment of installments. None of these installments were paid. It seems unreasonable and unjust to construe the necessary repossession of the lots by the defendant upon foreclosure of the trust deeds as the payment of installments by the purchasers so as to entitle the broker to the balance of his commissions. Without doubt that construction of the language is contrary to the evident intention of the parties. Under such construction the defendant would be compelled to pay the entire commissions based upon full payment by the purchasers in cash, in spite of the fact that the bank still finds itself with the lots on its hands. If the lots had been sold to independent purchasers on foreclosure of the

trust deeds, and the bank had received the balance of the purchase price in cash, then it might reasonably be said the deferred installments were paid, even though the payment was accomplished by means of foreclosure. But since they were not paid, and because of the default on the part of the purchasers, the defendant was compelled to repossess the property, it requires the application of an unjust fiction to assume that the necessary purchase of the lots at the foreclosure sale by the original owner, constituted a payment of installments which would make the defendant liable for the balance of the commissions. This construction does violence to the language of the contract and to the evident intention of the parties.

■ Where the terms of a contract reasonably require the discharge of an obligation by the "payment of money", it may not be satisfied otherwise, except by consent of the parties. (*Borland* v. *Nevada Bank of San Francisco*, 99 Cal. 89 [37 Am. St. Rep. 32, 33 Pac. 737]; 20 Cal. Jur. 909, sec. 8.) Upon the contrary it is true that when a reasonable construction of the contract authorizes it to be done, an obligation may be satisfied by means other than the payment of money. In the present case the language of the contract will not justify a construction which will imply the fulfillment of the "payment of installments", by the necessary repossessing of the land on the foreclosure of trust deeds.

One case from another jurisdiction, upon which the appellant relies, appears to support his contention that the repossessing of land by the original owner upon foreclosure of a trust deed for the balance of the purchase price is the equivalent of "payments" which entitles a broker to his commissions "to be paid out of the purchase money". This is the case of *Crane* v. *Eddy*, 191 Ill. 645 [85 Am. St. Rep. 284, 661 N. E. 431]. In that case it does not appear as it does in the present case that the broker had been partially paid for his services out of down payments made by the purchaser. The court there says: "If . . . any other person entitled had redeemed from the sale, clearly Crane would have been liable to Eddy for the balance unpaid upon this instrument. We fail to see why the fact that Crane chose to bid for the farm the full amount of the purchase money remaining unpaid, and the costs, and that no one raised his

bid and no one redeemed from the sale, should produce a different result as to Crane's liability upon the instrument sued upon. Jernberg's notes and the purchase money debt they evidenced are fully paid, satisfied, and discharged by the decree and sale to Crane. They have been satisfied in one of the ways Crane and Jernberg contracted they might be discharged.''

We are not in accord with the foregoing conclusions of that court as applied to the present case. We do see quite a distinction between that result and the final disposition of the land contracted to be sold for cash. In the first place, under the facts of this case, it may not be said the defendant bank ''chose to bid'' for the property. Upon the contrary it appears the bank was compelled to do so to protect its interests. There were no other *bona fide* bidders. Moreover there is a wide distinction between selling land for cash, and finding upon the default of the purchaser thereof, that the seller is compelled to retake the property instead of securing the cash for which he contracted to sell it. The result is entirely different from a foreclosure sale to an independent bidder who pays cash therefor. In one case the seller has his money. In the other case he still holds the land he may have been anxious to get rid of.

The case of *Cannon* v. *Selmser*, 85 Cal. App. 783 [260 Pac. 332], furnishes authority in support of the judgment in the present case. The facts in that case show that the defendant agreed to pay Cannon a broker's commission for the sale of a ranch. The balance of his commission was to be paid when the purchaser ''makes his first payment of $2,000''. As part payment the purchaser did convey to the defendant his five-acre lemon orchard at the agreed valuation of $6,000. A trust deed was executed to the defendant to secure the balance of the purchase price, including the $2,000 payment above mentioned. This first payment of $2,000 was not made. The purchaser defaulted. The trust deed was foreclosed and the defendant repossessed his ranch. In affirming the judgment the appellate court said: ''Foreclosure cannot be held the equivalent of payment of the first $2,000 installment, with accrued interest, which was the particular contingency upon which the parties contracted the commission should be earned.''

This language is pertinent to the situation in the present case.

The judgment is affirmed.

Plummer, J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1932.