[L. A. No. 12702. In Bank.—December 26, 1933.]

GEORGE W. GOODFELLOW et al., Appellants, v. A. W. GOODFELLOW et al., Respondents.

Head, Wellington & Jacobs and Thomas Ashby for Appellants.

B. H. Cory, Simpson & Simpson and W. E. Simpson for Respondents.

THE COURT.—Hearing was granted in this court, after decision by the District Court of Appeal, Fourth Appellate District, for the purpose of giving further consideration to the question of whether or not the finding of the trial court to the effect that the deed was not intended as a mortgage had evidentiary support in the record.

Our examination convinces us that the cause was properly disposed of by the District Court of Appeal in an opinion by Justice Jennings, and we therefore adopt that opinion as the decision of this court, as follows:

"This action was instituted by plaintiffs to quiet their title to certain real property located in Kings county. The complaint recites that on October 22, 1920, negotiations for the purchase of the land were entered into between plaintiff, George W. Goodfellow, and certain parties by the name of Barritt, who then owned the property and that it was agreed that the defendant A. W. Goodfellow would pay to B. F. Barritt the purchase price of the property, being the sum of $1,600 in cash, and that the deed to the property should be made to A. W. Goodfellow as security for the repayment to

him of said sum by the plaintiff, George W. Goodfellow. It is further alleged that the defendant A. W. Goodfellow specifically agreed with plaintiff George W. Goodfellow that when the sum of $1,600 should be repaid to said defendant the property would be conveyed to the plaintiff George W. Goodfellow and that in reliance upon this promise the said plaintiff permitted the deed to the property to be executed in the name of A. W. Goodfellow as grantee. The pleading alleges that the aforementioned plaintiff and defendant at all times material to the controversy between them were permitted to draw certain moneys from the estate of their father, which estate was in charge of their mother and that pursuant to this arrangement defendant A. W. Goodfellow caused the account of plaintiff George W. Goodfellow with the estate to be charged with the sum of $1,600 for the purchase of the land and his own account with the estate to be credited with said sum. It is then alleged that from November 6, 1920, until March 26, 1926, defendant A. W. Goodfellow held the property thus conveyed to him in trust for the plaintiff, George W. Goodfellow, and that on March 26, 1926, said defendant and his wife conveyed the property to the defendant L. L. Cory; that the conveyance to Cory was without consideration and for the purpose of defrauding plaintiff. The prayer of the complaint is that it be decreed that the deed to the defendant A. W. Goodfellow be declared void and canceled and the deed to Cory likewise ordered canceled and that it be adjudged that the plaintiff George W. Goodfellow is the owner in fee of the land free and clear from any claim of said defendants.

"The answer of the defendants A. W. Goodfellow and L. L. Cory admit that negotiations were entered into for the purchase of the land between plaintiff and the Barritts, as alleged in the complaint, but that the plaintiff was unable to comply with the terms agreed upon for the purchase and that by the mutual agreement of the vendors and the plaintiff and the defendant A. W. Goodfellow the land was actually purchased by A. W. Goodfellow and that with the acquiescence and consent of the plaintiff the deed conveying the land was executed to defendant A. W. Goodfellow as grantee; that the land was purchased by defendant A. W. Goodfellow, who paid the purchase price therefor for his sole use and benefit and not upon the understanding or agree-

ment that the deed to the land was to be made to said defendant as security for the repayment to him by the plaintiff of the purchase price; that at the time the land was so purchased by said defendant A. W. Goodfellow he gave to the plaintiff a verbal option to purchase the land, which option was without consideration and revocable by said defendant and was thereafter and prior to the commencement of the action revoked by defendant A. W. Goodfellow and by mutual consent of plaintiff and said defendant was terminated; that the defendant A. W. Goodfellow did not charge the sum of $1,600, being the purchase price of the land, to the account of plaintiff with the estate of the father of plaintiff and said defendant nor did he credit his account with said estate with such amount; that on March 26, 1926, the defendant A. W. Goodfellow and Katherine C. Goodfellow, in good faith and for a valuable consideration, executed and delivered to defendant L. L. Cory a deed to the land, which deed was executed without knowledge or notice on the part of the grantors or grantee that plaintiff George W. Goodfellow had any right, title, interest, or claim in the said property.

"Upon the issues framed by the aforementioned pleadings the action proceeded to trial. Upon the conclusion of the trial the court found that the land was purchased by the defendant A. W. Goodfellow for his sole use and benefit and that the deed conveying the land to said defendant was not delivered to him as security for the repayment of the purchase price of $1,600 by the plaintiff George W. Goodfellow or that said plaintiff agreed to pay to said defendant the sum of $1,600 or that defendant A. W. Goodfellow agreed to pay the purchase price of $1,600 upon the understanding or agreement that the deed to defendant A. W. Goodfellow was to be made as security for the repayment to said defendant of said sum by the plaintiff George W. Goodfellow. The court further found that at the time the deed was executed and delivered to the defendant A. W. Goodfellow said defendant granted to the plaintiff George W. Goodfellow a verbal option to purchase the land from him, which option was without any consideration and was revocable at the pleasure of said defendant and that thereafter and prior to the commencement of the action the option was repudiated by the plaintiff George W. Goodfellow and by mutual con-

sent of the said parties was canceled and annulled. The court further found that on March 26, 1926, the defendants A. W. Goodfellow and Katherine C. Goodfellow, in good faith and for a valuable consideration, executed a deed conveying the property to the defendant L. L. Cory, which deed was made with knowledge on the part of plaintiff George W. Goodfellow that it was executed for a valuable consideration and without knowledge or notice on the part of the defendants that said plaintiff had or claimed to have any right, title, claim, or interest in or to said property. It is also found that the plaintiffs have not nor has either of them any right, title, or interest in or to said property. From the findings thus made the court drew the conclusion that the plaintiffs were not entitled to succeed and rendered judgment accordingly in favor of the defendants. From this judgment plaintiffs have prosecuted the present appeal.

"The principal contention presented by appellants which they claim warrants a reversal of the judgment is the familiar contention that the findings which form the basis for the judgment are not sufficiently supported by the evidence. To be more explicit, it is particularly urged that the court's finding that the respondent A. W. Goodfellow purchased the property for his own use and benefit and that the deed conveying the land to him was not delivered to him as security for the payment by appellant George W. Goodfellow of the amount paid by A. W. Goodfellow as the purchase price of the land is lacking in evidentiary support.

"In the final analysis the evidence respecting the sale of the land and the circumstances under which the deed was made and delivered to A. W. Goodfellow rests entirely upon the testimony of appellant George W. Goodfellow and respondent A. W. Goodfellow. The testimony of these witnesses with respect to what was agreed upon between them is irreconcilably conflicting. Appellant George W. Goodfellow testified that at the time he made the oral agreement with the owner of the land to purchase it the vendor insisted that he be paid for it in cash, that appellant replied he could not pay all cash and that respondent A. W. Goodfellow, who was present, stated that the deed to the land could be made to him as grantee and that appellant could pay him 'when he gets it'. It is undisputed that the purchase price of $1,600 was paid by respondent A. W. Good-

fellow. Appellant George W. Goodfellow further testified that in the year 1926, after he had been advised that A. W. Goodfellow had conveyed the land to L. L. Cory, he demanded of A. W. Goodfellow that he execute a deed to the land to appellant. Respondent A. W. Goodfellow testified that at the time the oral agreement for the purchase of the land was made between B. F. Barritt, the owner, and appellant, George W. Goodfellow, the latter did not have the money to pay for the land and that the witness stated to the vendor: 'Well I will purchase this one hundred sixty acres of land from you and you give me a deed to the land in my name' and that he stated to appellant, George W. Goodfellow, 'I will buy this one hundred sixty acres of land and I will give you an option to buy it from me at what I have paid for it.' This witness further testified that he thereupon permitted the appellant to have the use of the land and that appellant in return therefor agreed to pay the taxes, that in the year 1925 it was brought to his attention that certain taxes assessed upon the land had not been paid by appellant and that he then stated to appellant that he would pay the taxes that had become delinquent and that he then and there terminated the verbal option he had given appellant to purchase the land from him. It is undisputed that appellant George W. Goodfellow did have the use of the land from the time the deed conveying it to A. W. Goodfellow was executed until the year 1925 and that he agreed to pay the taxes assessed against the land and that he did pay the taxes with the exception of one installment for the year 1925 which was allowed to become delinquent and that A. W. Goodfellow paid the delinquent taxes and redeemed the land.

"From the aforesaid evidence it was incumbent upon the trial court to determine whether the deed conveying the land to respondent A. W. Goodfellow was intended to operate as a mortgage securing the payment of the purchase price of the land or whether it was what it showed on its face, a deed outright vesting title in the grantee and that the parties interested, to-wit, respondent A. W. Goodfellow and appellant George W. Goodfellow, intended that the latter should have merely a verbal option to purchase the land at some future time upon payment by appellant to respondent of the sum paid by the latter as the purchase price. Certainly so far

as the latter theory is concerned there was evidence produced which justified the court in adopting it and in arriving at the conclusion that the deed was what it purported to be, an outright deed of conveyance, and that respondent and appellant so considered it and further intended that appellant should have a verbal option to purchase the land from respondent at the price originally paid therefor.

"That the court's determination of the question of fact thus presented was justified upon the conflicting testimony above mentioned is rendered the more certain when it is borne in mind that it is well settled that to warrant a trial court in determining from oral testimony that a deed purporting to convey land absolutely in fee simple is in reality something essentially different, viz., a mortgage or trust, such testimony must be clear, convincing, and conclusive (*Sheehan* v. *Sullivan,* 126 Cal. 189 [58 Pac. 543]; *Emery* v. *Lowe,* 140 Cal. 379 [73 Pac. 981]; *Kohn* v. *Parent,* 174 Cal. 570 [163 Pac. 1008]; *Stevens* v. *Fetterman,* 76 Cal. App. 741 [246 Pac. 102]).

"It may be observed that the trial court would have encountered further difficulty in sustaining the contention of appellants that the deed to A. W. Goodfellow, although in form a deed absolute, was in reality a mortgage, since a mortgage presupposes the existence of a debt for which the conveyance was security (*Henley* v. *Hotaling,* 41 Cal. 22; *Holmes* v. *Warren,* 145 Cal. 457 [78 Pac. 954]). The testimony of appellant George W. Goodfellow was that A. W. Goodfellow said that the deed could be made to him and that appellant could pay him when 'he gets it'. Assuming that the trial court accepted this testimony as a true and correct statement of what was said by A. W. Goodfellow at the time the deed was executed to him, so vague, uncertain, and indefinite an agreement could hardly be held sufficient to create an indebtedness from George W. Goodfellow to A. W. Goodfellow. Had the latter instituted an action against the former to enforce collection of the amount paid as the purchase price and sought to foreclose the mortgage on the theory that the deed was a mortgage and the evidence showed that the agreement was in accordance with appellant's testimony the burden would have rested upon respondent to prove that appellant was in fact able to make payment (*Van Buskirk* v. *Kuhns,* 164 Cal. 472 [129 Pac. 587,

Ann. Cas. 1914B, 932, 44 L. R. A. (N. S.) 710]; *California Prune etc. Growers* v. *Baker,* 77 Cal. App. 393, 397 [246 Pac. 1081]). It is also significant that appellant George W. Goodfellow did not testify that he expressed his assent to the statement attributed to A. W. Goodfellow that appellant could pay him when he should become able to do so. We think the court was amply warranted in accepting the testimony of the respondent A. W. Goodfellow that he gave appellant a verbal option to purchase the land conveyed to him and that the option was terminated by A. W. Goodfellow prior to the institution of this action.

"Some consideration should be given to the contention of appellants that respondent A. W. Goodfellow had in fact received payment of the sum originally paid by him as the purchase price of the land prior to the institution of this action and that therefore, accepting as correct his version of the agreement between the parties, viz., that he granted to appellant George W. Goodfellow an option to purchase the land at the original purchase price, appellants are nevertheless entitled to the relief demanded in their complaint.

"The record shows that George W. Goodfellow and A. W. Goodfellow are brothers and that for some considerable period of time prior to the commencement of this action loans of money were made to both brothers by their mother, Alice R. Goodfellow, and that in the books of the mother an account was carried in the name of each brother in which were entered the various amounts advanced from time to time to the debtor as well as such items of credit as he was entitled to receive. The record further shows that a short time subsequent to the purchase of the land the title to which is here in controversy, A. W. Goodfellow's bookkeeper charged George W. Goodfellow's account with the amount paid by A. W. Goodfellow as the purchase price of the land and forwarded to the office of Alice R. Goodfellow in San Francisco a schedule of items which were to be charged to the account of George W. Goodfellow, in which there was one item of $1,600 representing the price paid for the land and that as a consequence the indebtedness of George W. Goodfellow to Alice R. Goodfellow as shown by the latter's books was increased by this amount and the indebtedness of A. W. Goodfellow to Alice R. Goodfellow was decreased by the same amount. A. W. Goodfellow testified that he did not

learn that George W. Goodfellow's account on his books was charged with the amount paid by him for the land or that this amount formed one of the items forwarded by his bookkeeper to the office of Alice R. Goodfellow in San Francisco until the year 1926. The record contains no evidence that Alice R. Goodfellow knew that such an entry was to be made or that she approved or consented to it after it was made. A. W. Goodfellow also testified that the transaction whereby he paid the purchase price of the land was a cash transaction 'which he was supposed to pay me in cash'.

"The principle is well established that where a contract for the sale of property is entered into and it appears that the terms of such contract require payment to be made in money the obligation of the purchaser to pay may only be satisfied by payment in money unless the parties to the contract agree that some other medium of payment shall be substituted therefor (*Borland* v. *Nevada Bank,* 99 Cal. 89 [33 Pac. 737, 37 Am. St. Rep. 32]; *First National Bank* v. *Corcoran,* 105 Cal. App. 116 [286 Pac. 1105]; *Margolis* v. *Los Angeles-First Nat. etc. Bank,* 122 Cal. App. 186 [9 Pac. (2d) 526]). As above noted, there was evidence that the agreement between respondent A. W. Goodfellow and appellant George W. Goodfellow called for payment by the latter to the former in cash and it was for the trial court to determine whether the evidence showed that A. W. Goodfellow ever agreed or consented to accept a different medium of payment than cash. The court's findings make it clear that the trier of facts accepted the testimony of A. W. Goodfellow as the correct explanation of the transaction between the brothers and under the circumstances disclosed by the record we cannot declare that the court erred in so doing. It must again be observed in this regard that the court specifically found that the deed from Barritt to A. W. Goodfellow was not executed pursuant to an agreement between the brothers that it should be held by the grantee as security for the payment to him by George W. Goodfellow of the amount of the original purchase price or that A. W. Goodfellow held title to the land in trust for George W. Goodfellow but that A. W. Goodfellow purchased the land for his own use and benefit and merely granted to his brother, George, a verbal option to buy the land from him at the price which he had paid for it which option was entirely unsupported by any con-

sideration and revocable at the pleasure of said respondent. The court also found that the option thus given was terminated by A. W. Goodfellow prior to the institution of this action. As heretofore pointed out, there was evidence to support the findings thus made and we are therefore bound to uphold them. The contention of appellants that the entries in the books of Alice R. Goodfellow whereby the indebtedness of George W. Goodfellow to his mother was increased in the amount of $1,600 and the indebtedness of A. W. Goodfellow was decreased by a like amount amounted to payment of the sum of $1,600 without any additional evidence that George W. Goodfellow ever exercised the option to purchase the land was in conformity with the theory and contention consistently advanced by appellants throughout the trial that the two brothers agreed at the time the deed was executed that A. W. Goodfellow should take title to the land and hold the same as security for the payment to him of an indebtedness of $1,600 then created in his favor by George W. Goodfellow. There was evidence, however, which warranted the court in finding that there was no such agreement between the brothers and that no such indebtedness was created. The purported payment made in the manner above indicated standing alone could hardly be said to discharge an obligation which never existed.

''Our conclusion that the court's findings with respect to the nature of the transaction between George W. Goodfellow and A. W. Goodfellow and that the deed to the latter was not given as security for the payment of the purchase price of the land are not lacking in evidentiary support eliminates the necessity for any consideration of those findings which relate to the position of the respondents Carolyn A. Cory as executrix and Benjamin H. Cory as executor of the last will and testament of L. L. Cory, deceased. Since there was evidence that A. W. Goodfellow purchased the property for himself and merely granted an option for its sale to George W. Goodfellow which was terminated prior to the time when A. W. Goodfellow executed the deed conveying the land to L. L. Cory no question can arise as to the good faith or knowledge of L. L. Cory or the consideration paid by L. L. Cory to A. W. Goodfellow and Katherine C. Goodfellow.''

Judgment affirmed.