[Civ. No. S. C. 6.   Second Appellate District, Division One.—February 9, 1937.]

ELIZABETH ELDRED, Appellant, v. Estate of ADOLPH TSHEPPE, Deceased, et al., Respondents.

Samuel A. Rosenthal and Burton Briggs Crane for Appellant.

Harold Richardson and Wingert & Bewley for Respondents.

DESMOND, J., *pro tem.*—Plaintiff appeals from a judgment rendered by the court in an action to quiet title to certain real property which we shall hereafter call the Painter Avenue property, located in the city of Whittier.   It is contended that the evidence was insufficient as a matter of law to support the findings upon which the decision of the trial court was based.

The principal defendant in the case is F. W. Hadley, sued as the executor of the Estate of Adolph Tsheppe, who died on April 23, 1934, at which time the property involved stood in his name.   It appeared from the evidence that appellant in

1919 entered the employ of the decedent as his housekeeper and continued in that relationship until the time of his death, a period of about fifteen years. In addition to looking after Mr. Tsheppe's household affairs, she assisted him in caring for his property, collected his rentals, aided him in designing certain buildings and advised him concerning the construction thereof. The decedent derived a considerable revenue, at least in the early years of Mrs. Eldred's employment, from oil properties, and although he was approximately 76 years of age in 1919, he was a very active and energetic man for his years and thereafter engaged in business enterprises until he was ninety years of age or thereabout.

After these two people had lived together for a period of three years or more, they became interested in the Painter Avenue property, which in September of 1922 they undertook to buy from Jacob Stern & Sons, Inc. The purchase price of the property was $8,000. Upon it was an old house and while it was the original intention of the parties to make the purchase under a contract running over a lengthy period of time, that purpose was abandoned when the owners of the land objected to the demolition of the old building standing upon it. This objection was made in December of 1922, after Mrs. Eldred had made two of the first three monthly payments of $60 which had theretofore become due. The balance of the purchase price was paid at that time by Mr. Tsheppe, and Stern & Sons, Inc., issued a deed dated December 22, 1922, conveying to Tsheppe an undivided one-half interest in the real estate and to Mrs. Eldred, also, an undivided one-half interest. One month later, on January 22, 1923, Mr. Tsheppe and Mrs. Eldred conveyed to J. H. Reese and Rose T. Reese all their right, title and interest in and to the property in question, and the Reeses immediately reconveyed the property in joint tenancy to Mr. Tsheppe and Mrs. Eldred. This deed was recorded on February 7, 1923. Mrs. Eldred testified that Mr. Tsheppe stated to her at the time she was made his joint tenant that "He wanted me to stay with him; take care of him the rest of his days, and he wanted me to have that as my work, and he wanted to make it solid so it could not be taken away from me"; and as to the income from the property: "He wished all that income as long as he lived. Q. What did he say in that regard? A. Then he said, 'When I close my eyes, it will be yours.'"

In October of the same year Mrs. Eldred signed the following document, handwritten by Mr. Tsheppe:

"E. Whittier                                October 24th 1923
"For the consideration of Five hundred Dollars paid

| | |
|---|---|
| to me by check | $120.00 |
| Furniture in home | $280.00 |
| 443 S. Newlin Ave. | |
| One hundred dollars | 100.00 |
| credit on Royalty on | |
| Shepp Noble lease | |

500.00

"I herewith agree to terminate contract of partnership in the property 325 N. Painter Ave. wich I entered into with Adolph Tsheppe.
~~"Sept.~~ 22nd  1923          (Signed)      Mrs. E. Eldred."
"Jan.

It appears from an examination of the photostatic copy of this instrument which was introduced as an exhibit at the trial that alterations were made in the document as originally written. The word "Sept." was stricken and "Jan." written by the hand of Mr. Tsheppe in pencil beneath it. The final digit which originally appeared in the year of the date was erased and the figure "3" was entered, but when the changes were made is not known. Respondents offered in evidence a statement handwritten by Mr. Tsheppe showing the condition of his account with the Whittier Savings Bank during the year 1923 containing under date of October 24th the following notation "partnership with Mrs. Eldred ended today by paying her $500, partly in goods, credit and check". Respondents contend that the signing by Mrs. Eldred of this $500 contract in 1923 operated virtually as a surrender of all rights in the property which she had received by the joint tenancy deed and that the surrender was made complete legally when, several years later, on the 12th day of December, 1929, she conveyed to Mr. Tsheppe by means of a grant deed, an undivided one-half interest in and to the Painter Avenue property. During all the intervening years this property was held in joint tenancy by Mr. Tsheppe and Mrs. Eldred. Shortly after it was acquired in January of 1923, it had been improved by the construction of a large building on the front of the lot and garages with housekeeping apartments over-

head on the rear portion of the property. The total cost of the land and buildings, according to a memorandum made by Mr. Tsheppe and introduced in evidence, was $34,522.27, of which, the memorandum showed, Mrs. Eldred contributed $132.54. All revenue from the property during Mr. Tsheppe's lifetime was paid to him, Mrs. Eldred receiving no return therefrom but being paid by Mr. Tsheppe regularly every month amounts varying from $60 to $100, and occasionally receiving gifts of cash from him.

In the fall of 1929, Mrs. Eldred, who bought and sold property on her own account, wished to borrow $2,000 to enable her to purchase a parcel known as the Hecathorn property. According to her testimony she asked Mr. Tsheppe for the loan; he agreed to make it and a little later, on December 12, 1929, an escrow was made at the Whittier branch of the Bank of America, under the terms of which Mr. and Mrs. Hecathorn contracted to sell their property to Mrs. Eldred upon a down payment of $2,000, and Mr. Tsheppe deposited that sum in the escrow payable to the order of Elizabeth Eldred: '' . . . provided that on or before 30 days from date hereof you can deliver to me the following: 1st—Unrecorded deed, executed by Elizabeth Eldred in favor of Ad. Tsheppe of her undivided one-half interest in and to the real property, described as follows: (then follows a description of the Painter Avenue property). 2nd—Contract, unrecorded, dated December 12, 1929, executed by and between J. L. Hecathorn and Blanche M. Hecathorn, husband and wife, as Vendors, and Elizabeth Eldred, (then follows a description of the Hecathorn property). 3rd—Collateral Security Note for $2,000.00, dated December 12, 1929, executed by Elizabeth Eldred in favor of Adolph Tsheppe, due three years after date, with interest from the date at the rate of 7% per annum, payable quarterly, at Whittier Branch, Bank of America of California, Whittier, California, and covering the above mentioned contract.'' As to the deposit in escrow of this deed by which Mrs. Eldred conveyed a one-half interest in the Painter Avenue property to Mr. Tsheppe, she testified: ''Well, he said he would put up the deed for security. I had some oil papers to offer him, but he said no; he would put up this deed. And jokingly he said, if I couldn't pay the two thousand, I would lose my opportunity for the apartment house.'' (Meaning the Painter Avenue property.) ''Q. What did you say? A. I said, 'Well, in six

months I will turn something and pay you that back.' Which I did, with another piece of property.'' The record shows that Mrs. Eldred acquitted herself of this obligation to Mr. Tsheppe, for under date of September 30, 1930, he wrote at the end of a letter which the Whittier branch of the Bank of America had sent to Mrs. Eldred, referring to the Hecathorn-Eldred-Tsheppe escrow, and enclosing certain papers relative thereto, the following: ''Mrs. Eldred paid me the Two thousand dollars owing me by transferring 542 Howard Street House to me on Sept. 30, 1930. (Signed) Ad. Tsheppe.'' As to the ''unrecorded deed'' mentioned in the escrow, Mrs. Eldred's testimony was as follows: ''Q. State what if anything was said as to the return of this unrecorded deed. A. Why, when I paid it, he was to return it to me, just as it was put up there. Just for security. Q. By the Court: You mean that was what was said at that time? A. Yes; said at that time.'' Although the $2,000 debt was paid to Mr. Tsheppe in September of 1930, he did not return to Mrs. Eldred the deed which he had held unrecorded, but when, according to her testimony, she asked him for it he then told her that he desired to borrow $5,000 on the Painter Avenue property and requested her to negotiate with the Whittier National Trust & Savings Bank for a loan of that amount to him. Counsel for the bank stated in open court that: ''At that time, he brought in certain title policies which showed the property to be in joint tenancy; and the Bank required either Mrs. Eldred to sign the note or to convey the property to Mr. Tsheppe. The deed was brought in, conveying that property to Mr. Tsheppe; whereupon we loaned $5,000 cash.'' For this loan the bank took a $5,000 note, secured by a trust deed of the Painter Avenue property. This loan had not been discharged but at the time of trial had been reduced to the amount of $3,500. As to certain payments which had been made thereon, Mrs. Eldred testified: ''He said, now he had paid in January, February, and March. In April he was taken sick, and while he was very sick he said 'When I get better I will pay the rest of that so it will be all clear for you when I pass out and close my eyes.' ''

Mrs. Eldred had never at any time received any income from the property, and the deed which she made to Mr. Tsheppe on December 12, 1929, was not recorded until December 27, 1930, at which time the Whittier National Trust &

Savings Bank forwarded it to the county recorder for record in connection with the $5,000 loan to Mr. Tsheppe.

Appellant argues strongly that the agreement to terminate the partnership related solely to a partnership in revenues and not to ownership of the realty, finding support for this argument in the fact that for more than six years after October 24, 1923, no change was made in the title to the Painter Avenue property. It continued to be held in joint tenancy by appellant and decedent. Further, it is pointed out that when appellant's interest as a joint tenant was finally conveyed by the deed of December 12, 1929, it was by means of an "unrecorded deed" so described in the escrow, and appellant maintains that it seems reasonable, under the circumstances, to conclude that this deed which was not recorded for more than a year thereafter was given as additional security for the loan of $2,000 made by decedent to appellant. Otherwise, it is said, the only security decedent would have received in this transaction was the contract of purchase which appellant had made with the Hecathorns and the transaction in that form would have made him in effect the purchaser of the Hecathorn property instead of Mrs. Eldred who contracted for it. If the purpose of the deed when given in December of 1929 was to divest Mrs. Eldred permanently of her interest in the Painter Avenue property, why, appellant asks, was the arrangement made that it should be held as an unrecorded deed? And, if it were not to be held as an "unrecorded deed" on the theory that those words were written by the escrow clerk merely as a description of the instrument without any special meaning to be attached to the word "unrecorded" then why, when Mr. Tsheppe received the deed, did he not actually record it if it was his intention to terminate the joint tenancy? Very likely these and other arguments which appear in appellant's able brief were addressed to the trial court, but that tribunal, notwithstanding, was not convinced that the deed was intended merely as security for the payment of the $2,000 note. We have no means of knowing what passed through the mind of the trial judge. As opposed to the arguments of appellant he may have given some consideration not only to the partnership termination agreement but also to the fact that the escrow instructions signed by Mr. Tsheppe did not mention the deed as security for the performance of any promise, while it did expressly refer to the "Col-

lateral Security Note for $2,000 . . . covering the above mentioned contract", to wit, the contract of purchase from Hecathorn which, incidentally, was mentioned as an "unrecorded contract". He may have wondered why Mrs. Eldred did not effectively assert her joint tenancy interest in the property by signing with the decedent the trust deed and note at the time the $5,000 loan was made from the bank, instead of delivering to that institution the instrument which conveyed away her rights. And it is undisputed that for more than three years after that loan was made no attempt was made by appellant to secure from Mr. Tsheppe her former interest in the property. These are a few of the considerations that run counter to the arguments of appellant. They are sufficient to indicate a condition which would not warrant this court in disturbing the conclusions reached by the trial court. It is stated in *Harris* v. *Harris*, 136 Cal. 379 at 384 [69 Pac. 23] : ''The rule is well settled that one who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing. (*Woodside* v. *Hewel*, 109 Cal. 481 [42 Pac. 152] ; *Plass* v. *Plass*, 122 Cal. 3 [54 Pac. 372].) Whether the evidence in any particular case is of this character must be determined by the trial court, and its determination thereon will be accepted by this court as conclusive. In the present case the superior court held that the evidence before it was not sufficient to sustain this claim of the plaintiff, and we cannot say that the evidence required a different conclusion.'' (See, also, *Brison* v. *Brison*, 90 Cal. 323, 334 [27 Pac. 186] ; *Bollinger* v. *Bollinger*, 154 Cal. 695, 703 [99 Pac. 196] ; *Goodfellow* v. *Goodfellow*, 219 Cal. 548, 554 [27 Pac. (2d) 898] ; 9 Cal. Jur. 338; 17 Cal. Jur. 756.)

Judgment affirmed.

Houser, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 1, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1937.