**FLETCHER REALTY, INC., Appellant,**

v.

**HAYSLOPE PROPERTIES, et al., Appellees.**

Court of Appeals of Tennessee, Eastern Section.

May 23, 1986.

Application for Permission to Appeal Denied by Supreme Court May 27, 1986.

Craig J. Donaldson and Thomas J. Slagle, Heiskell, Donelson, Bearman, Adams, Williams and Kirsch, Knoxville, for appellant.

Robert L. Crossley and Edward A. Cox, Jr., Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, for appellees.

## OPINION

PARROTT, Presiding Judge.

Plaintiff, Fletcher Realty, Inc., has appealed the chancellor's decision denying plaintiff's claim for a real estate commission and dismissing plaintiff's complaint.

Hayslope Properties, a Tennessee general partnership composed of Ellen Roddy Mitchell, James Patrick Roddy, III, and Thomas R. Roddy, owned several tracts of land. The most valuable property owned by Hayslope was a tract of land located in West Knoxville known as the Roddy farm. During the early 1970's, Fletcher Realty, Inc. and its president, Jeff Fletcher, were retained by Hayslope in connection with the properties owned by the partnership.

Beginning in 1975 Jeff Fletcher performed substantial services for Hayslope in an attempt to develop and market the Roddy farm. A planning firm was hired to prepare a development plan for the Roddy farm. In the summer of 1977 the proposed development plan was rejected by the Knoxville City Council and thereafter Hayslope decided to sell the Roddy farm.

Fletcher's efforts to locate a buyer resulted in Hayslope entering into a contract for the sale of the property to The Dickerson Company, a California corporation, in August of 1977. Prior to this sale, no written agreement was entered into between Hayslope and Fletcher concerning Fletcher's services as real estate agent on behalf of Hayslope. The purchase agreement provided that the purchase price would be $2,184,116.56, with $10,000 being paid at closing and the remaining $2,174,116.56 evidenced by a promissory note payable over a five-year period with an annual interest rate of six percent. The purchase agreement stated that Fletcher was to receive a commission of ten percent for acting as the real estate broker. The relevant language of the purchase agreement reads as follows:

12. *Broker.* It is understood and agreed by the parties hereto that this agreement was procured largely through the efforts of Fletcher as broker. In its capacity as broker, Fletcher has rendered a valuable service and has agreed to serve as agent for the purposes of releases as set forth in Paragraph 10 hereof for which reasons Fletcher is made a party to this Agreement. The parties agree that Fletcher is entitled to commission rights in the amount of ten percent (10%) of the purchase price payable on the following basis:

(a) Ten percent (10%) of the down payment due and payable at closing.

(b) Ten percent (10%) of all payments on the Note applied to principal only as received by Sellers.

The Dickerson Company paid $10,000 at closing and subsequently made payments on the note totaling $126,606.56. In accordance with the terms of the purchase agreement, Fletcher was paid $13,660.00 as a commission. During the period following the sale, Fletcher assisted Hayslope in collecting some of the payments, particularly interest payments.

In July of 1978, The Dickerson Company sold and conveyed its interest in the Roddy farm to Knoxville Associates, Ltd. In connection with the sale, Knoxville Associates

paid Hayslope $250,000, thereby reducing the unpaid principal indebtedness to $1,797,510 and become a co-maker of the promissory note. Fletcher was paid $25,000 as a portion of its commission.

Ultimately, the Dickerson Company and Knoxville Associates defaulted on their payments under the promissory note and Hayslope initiated foreclosure proceedings. A foreclosure sale was held on March 23, 1984, by David R. Piper, substitute trustee. Hayslope, the only bidder at the sale, bid the exact amount of principal still owing on the promissory note, $1,797,510, and reacquired title to the Roddy farm. Hayslope did not receive any money from the discharge of the unpaid principal balance.

Five days after the foreclosure sale, Fletcher was contacted by Mr. Gordon Smith, representing himself and Mr. Morgan Schubert, concerning the possible purchase of the Roddy farm. Mr. Smith and Mr. Schubert met with Jeff Fletcher and they prepared an unsigned offer to purchase the Roddy farm for $1,200,000. Mr. Schubert gave Mr. Fletcher an earnest money check in the amount of $100,000.

On April 3, 1985, the defendants' attorney, Mr. Robert Crossley, notified Mrs. Dorothy Roddy, the manager of Hayslope Realties, that Fletcher's attorney, Mr. Wynn James, had contacted him concerning Fletcher's right to a commission in connection with the foreclosure transaction. Later that morning Jeff Fletcher called Mrs. Roddy and told her he was coming over with a contract. Mrs. Roddy called Mr. Crossley and asked his advice as to what she should say to Mr. Fletcher with respect to his right to a commission from the foreclosure sale. Mr. Crossley advised Mrs. Roddy on what to tell Mr. Fletcher and she took notes on that advice. Shortly thereafter, Mr. Fletcher arrived at Mrs. Roddy's office with the unsigned sales contract and the earnest money check. Mrs. Roddy told Mr. Fletcher that he was not and had not been authorized to represent Hayslope Properties in connection with the Roddy farm and that if Fletcher was to receive any commission from a sale to Smith and Schubert, he would have to obtain it from the buyers. Mr. Fletcher testified that he was shocked by Mrs. Roddy's statements. Mr. Fletcher stated that he was not seeking a commission in connection with any potential sale of the farm to Smith and Schubert. Mr. Fletcher left the unsigned contract and the earnest money check with Mrs. Roddy.

Mrs. Roddy again contacted defendants' attorney, Mr. Crossley, and a letter setting forth what occurred at the April 3 meeting between Mrs. Roddy and Mr. Fletcher was prepared. In that letter Mrs. Roddy stated that she had told Mr. Fletcher that he had not been retained to sell the Roddy farm and that any commission to him on a sale to Schubert and Smith would have to come from the buyers. She closed requesting that Mr. Fletcher inform her in writing if he believed that her letter did not accurately describe their conversation of April 3, 1984. Mrs. Roddy delivered the letter to Mr. Fletcher on April 4, 1984.

On April 5, 1984, Mr. Fletcher wrote a reply to the letter he had received from Mrs. Roddy. This response letter does not directly dispute Mrs. Roddy's written account of their April 3 conversation.

On or about April 5, 1984, Hayslope sold the Roddy farm to Schubert and Smith for a purchase price of $1,650,000. Mr. Fletcher did not receive a commission from this sale.

On June 7, 1984, plaintiff filed a complaint against the defendants seeking to recover real estate commissions on two separate sales of the Roddy farm, based on theories of breach of express contract (with respect to the first sale), breach of an implied contract (with respect to the second sale), and quantum meruit (with respect to both sales). On July 18, 1984, defendants filed an answer and also filed a counterclaim against plaintiff alleging a breach of fiduciary duty by plaintiff in the sale of another parcel of property on behalf of defendants.

On January 30, 1985, ruling on cross-motions for partial summary judgment, the trial court ruled that under the 1977 sales

contract only ten percent of amounts actually paid by the California purchasers was recoverable by plaintiff as a real estate commission with nothing allowable for the amount bid in on the unpaid balance on the note at the foreclosure sale. For this reason, plaintiff's suit to recover a commission on the first sale based on a theory of breach of express contract was dismissed. Trial on the remaining issues took place on February 7 and 8, 1985, and a final judgment dismissing the remainder of the plaintiff's complaint and the defendants' counterclaim was entered on February 19, 1985.

Plaintiff has asked us to consider two issues on appeal. First plaintiff insists that the trial court erred in denying plaintiff a ten percent commission upon the $1,797,510 bid in by defendants at the foreclosure sale. The question before us is whether the condition precedent to plaintiff's receiving a commission, namely plaintiff is to receive "Ten percent (10%) of all payments on the Note applied to principal only as received by Sellers," has been satisfied by the defendants' bidding in the remainder due under the note at the foreclosure sale. While Tennessee has not specifically addressed this issue, there are two distinct lines of authority. A number of states follow the rule that where a broker is to receive a commission out of the purchase money as it is paid to the seller, in the event of default by the buyer and a foreclosure sale where the seller purchases or bids in the property, the broker is entitled to a commission. *Crane v. Eddy*, 191 Ill. 645, 61 N.E. 431 (1901); *Elmen v. Winfield*, 80 S.W.2d 343 (Tex.Civ.App.1935). The rationale behind this rule is that where a broker would be entitled to a commission from the sale of the property to an independent party at a foreclosure sale, the broker's right to a commission should not change simply because the seller purchases the property at a foreclosure sale.

The other states which have addressed this issue follow the rule that where the broker is to receive a commission out of the purchase money as it is received by the sellers, in the event of a default and foreclosure sale where the sellers bid in the property themselves, they would not be obligated to pay the commission. *Craig v. Margrave*, 446 P.2d 653 (Nev.1968); *Margolis v. Los Angeles-First National Trust & Savings Bank*, 9 P.2d 526, 122 Cal.App. 186 (1932). The rationale supporting this rule is that the sellers have bargained to receive payments in money for their property and have required that the broker's commission come from the purchase price and not the sellers' pockets. If an independent buyer purchases the property at a foreclosure sale, then the sellers receive the purchaser's money out of which the broker's commission can be paid. If the sellers bid in the property, they get the property back, not the payments of money out of which the broker's commission was to be paid.

■ In this case, the agreement between the parties was that the plaintiff was to be paid a commission on all payments as received by the defendants. We believe this agreement clearly indicates that the parties intended the plaintiff's commission to come out of the purchaser's pocket and not the sellers'. For this reason, in the instant case we adopt that line of authority which holds that if sellers bid in the property themselves, they are not obligated to pay the broker's commission. We affirm the lower court's dismissal of plaintiff's suit to recover a commission on the first sale based on a theory of breach of express contract.

■ Plaintiff next contends that the trial court erred in denying plaintiff real estate commissions on the two sales of the Roddy farm based on a theory of quantum meruit. The trial court determined that plaintiff was not entitled to recover under this theory because there was an express contract or agreement governing both of the sales in question and this Court agrees.

It is a general rule of law that an implied contract or quasi-contract will not be imposed in circumstances where an express contract or agreement exists. 66 Am. Jur.2d *Restitution and Implied Contracts* § 6 (1964). In connection with the first

sale of the Roddy farm to The Dickerson Company, a written contract was entered into between Hayslope, Fletcher Realty and The Dickerson Company which expressly provided for a commission. As there was an express agreement for the payment of a commission on the first sale, there can be no claim for quantum meruit based upon the first sale. With respect to the second sale, the correspondence of April 3, 1984, and April 5, 1984, between Mrs. Roddy and Mr. Fletcher establishes that there was an express agreement between the parties that no commission would be paid to Fletcher by Hayslope on the sale to Smith and Schubert. Plaintiff's claim for a commission on the second sale based on the theory of quantum meruit is precluded by the express agreement between the parties that no commission would be paid.

For the reasons given above, we affirm the decision of the lower court. Costs to be taxed to plaintiff-appellant.

SANDERS, J., and MATHERNE, Special Judge, concur.