IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 9, 2001 Session

# PRECISION MECHANICAL CONTRACTORS, ET AL. v. METROPOLITAN DEVELOPMENT AND HOUSING AGENCY

**Direct Appeal from the Chancery Court for Davidson County**
**No. 98-1433-III; The Honorable Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-02117-COA-R3-CV - Filed October 25, 2001**

---

This appeal arises from a dispute over two construction contracts. One contract involved the replacement of furnaces at the Preston Taylor Homes Housing Project, and the other contract was for underground utilities and site work at the Tony Sudekum Homes Housing Project. Plaintiff filed suit seeking additional compensation based upon its performance of the two contracts with Defendant. The trial court granted Defendant's motion for an involuntary dismissal after the close of Plaintiff's proof. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Don L. Smith, Kenneth S. Schrupp, Nashville, for Appellant

H. Frederick Humbracht, Jr., Russell B. Morgan, Nashville, for Appellee

**OPINION**

**Facts and Procedural History**

The Appellant, Precision Mechanical Contractors (Precision), is a Tennessee contractor. The Appellee, Metropolitan Development and Housing Agency (MDHA), is a governmental housing agency. This dispute arises from two separate contracts for construction entered into by the parties: the Preston Taylor Homes project, and the Tony Sudekum Homes project. Precision filed suit against MDHA, alleging breach of contract and unjust enrichment.

## The Preston Taylor Homes Contract

Precision and MDHA entered into the Preston Taylor contract on September 12, 1995. The contract called for Precision to "furnish all supervision, labor, materials, equipment and services, including related accessories and specialties for replacement of gas furnaces. . . ." Specifically, the contract called for the replacement of furnaces in approximately 550 units at the Preston Taylor Housing Project, including the necessary venting, piping, etc. The contract amount was $1,208,580.00, and the contract called for completion within 240 days.

Once the work began, various issues arose. First, Precision had planned to use a substitute furnace. There was some controversy surrounding the manufacturer's recommendations that the substituted Rheem furnace should be installed on a dedicated circuit. Also, issues arose over the manufacturer's recommendations that a condensate line should be installed to remove the condensate that would form. Furthermore, in the five bedroom units, it was determined that one unit was inadequate, and that an additional unit would be necessary. Finally, Precision claims that MDHA repeatedly refused requests for final inspections. Moreover, Precision claims that these delays caused them damages. Following final payment on the project, Precision filed suit for alleged extra work and costs associated with delays.

Specifically, Precision alleges the following damages on the Preston Taylor Project: $73,084.78 as a direct cost for delays; $136,338.25 for disputed change orders; and $270,310.80 in unabsorbed home office overhead damages.

## The Tony Sudekum Project

Precision and MDHA entered into the contract for the Tony Sudekum project on August 29, 1995. The contract called for Precision to "furnish all supervision, labor, materials, equipment and services, including all related accessories and specialties for replacing water and gas lines and sanitary sewerage system. . . ." The contract amount was $1,708,741.00. Precision claims that its bid was a lump sum bid and was not tied to the specific line items contained in the bid package.

An issue arose over the line item "Unclassified Excavation." Precision claimed that they were entitled to additional monies for unclassified excavation. MDHA disagreed, taking the position that the excavation Precision was seeking extra payments for was included within the specific categories of work.

Other issues also arose regarding the Tony Sudekum project. Specifically, there was controversy surrounding a proposed road extension that MDHA deleted from the contract because the road extension was deleted from the scope of the work. Precision also claims additional damages from delays it attributes to MDHA.

Specifically, Precision alleged the following damages on the Tony Sudekum Project: $36,500.00 that MDHA withheld as liquidated damages; $677,206.25 in disputed quantity

calculations and unapproved change orders; and $464,491.56 in unabsorbed home office overhead damages.

The case was tried in Davidson County Chancery Court from July 10 through July 13, 2000. At the close of Precision's proof, MDHA moved for an involuntary dismissal pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure. The trial judge granted MDHA's motion for an involuntary dismissal as to all of Precision's claims except Precision's claims to recover liquidated damages assessed by MDHA on the Tony Sudekum project. After the court made its ruling, Precision then nonsuited its claim for liquidated damages assessed by MDHA on the Tony Sudekum project. The court entered its final order on August 3, 2000, and Precision timely filed a notice of appeal.

Precision appeals the decision from the court below and presents the following issues for our review:

I.      Whether the trial court erred in ruling that Precision had failed to provide sufficient notice of its claims to MDHA.
II.     Whether the trial court erred in ruling that Precision had failed to present proof of damages resulting from delays on the projects.
III.    Whether the trial court erred in ruling that Precision had failed to present proof of the actual value of the work performed.
IV.     Whether the trial court erred in denying Precision recovery on its claims.

MDHA presents the following additional issue for our review:

I.      Whether the trial court erred in holding that the Eichleay formula was an appropriate method of calculating Precision's claimed damages.

**Standard of Review**

In pertinent part, Rule 41.02(2) of the Tennessee Rules of Civil Procedure provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

When such a motion is made, the trial court must impartially weigh and evaluate the evidence just as though it were making findings of fact and conclusions of law after presentation of all the evidence. See Atkins v. Kirkpatrick, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). If the plaintiff's case has not been established by a preponderance of the evidence, the case should be dismissed if, on the facts found in the applicable law, the plaintiff has shown no right to relief. See id. (citing City of Columbia v. C.F.W. Constr. Co., 557 S.W.2d 734 (Tenn. 1977)). Our review of a dismissal under Rule 41.02(2) of the Tennessee Rules of Civil Procedure is controlled by Rule 13(d) of the Tennessee Rules of Appellate Procedure. The findings of fact by the trial court in granting such a

motion are accompanied by a presumption of correctness and, unless the preponderance of the evidence is otherwise, those findings must be affirmed. See College Grove Water Util. Dist. v. Bellenfant, 670 S.W.2d 229 (Tenn. Ct. App. 1984); Akbari v. Horn, 641 S.W.2d 506, 508 (Tenn. Ct. App. 1982).

## Law and Analysis

## The Preston Taylor Project

We will address Precision's issues as they arise in the trial judge's findings of fact and conclusions of law. After Precision selected an alternative furnace, it was subsequently discovered that the building code regulations required a separate drain line for the furnace unit's condensate. Precision submitted a request for a change order to MDHA, but the change order was denied.

We note that the contract required that the installation be performed according to the manufacturer's specifications. It is undisputed that the specifications for the alternative furnace submitted by Precision required that a condensate line be installed. At trial, Mr. Anderson, who is the general managing member of Precision, testified that he did not read the product literature to determine if the alternative Rheem unit required a condensate line. Mr. Anderson also acknowledged that the contract required Precision to install the units in accordance with the manufacturer's recommendations.

In ruling on the condensate issue, the trial judge found the following:

> As to item one, the condensate line on the Rheem unit, the court determines that the plaintiffs did not perform the requirements of the contract so as to be entitled to recovery on this claim. Specifically, the court finds that the plaintiffs have not carried their burden of proof to show that they performed the requirements of Article 29(e) and (f) of the General Conditions to qualify for an adjustment.

Section 29(e) of the contract states in relevant part that:
> The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause, or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting a written statement describing the general nature and the amount of the proposal . . . No proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract.

Due to the foregoing contract language and after a review of the record, we agree with the trial court that Precision did not comply with the requirements of the contract. Therefore, we find that this issue is without merit.

The next issue involves the two bedroom units. Originally, the design called for the units to be vented so that the pipe would be snug against the ceiling. However, the building codes required a different method of venting. MDHA instructed Precision not to proceed with the installation in the two bedroom units until MDHA could determine the appropriate installation method. Precision alleges that this action by MDHA caused them delays, which also caused them damages.

In ruling on this issue, the trial court stated the following:

> [T]he trap created by the pipe dropping under the beam in the two-bedroom units, the Court determines that there is not proof by the plaintiffs of [the] fact of damages. The plaintiffs have not carried their burden of proof to demonstrate the existence or fact of damage caused by alleged delays. For example, there was no proof that the plaintiffs had to stop work or were secluded from other jobs. The Court concludes that there was inadequate proof there existed any damage to the plaintiffs as a result of the delay.

After a thorough review of the record, we agree with the trial court that Precision failed to carry its burden regarding damages caused by the delay. Precision did not show that crews were idle as a result of the delays, nor did Precision prove that they suffered increased costs. Accordingly, this issue is without merit.

Next, we turn to the dedicated circuit issue. As Precision was beginning its work replacing the furnaces, Precision was instructed that the new furnaces had to be installed on dedicated circuits in order to comply with the Code. Precision complied and installed the furnaces on dedicated circuits. Precision then submitted change orders to MDHA, which were rejected. Once again, we note that Mr. Anderson testified at trial that Precision was required under the contract to comply with the manufacturer's recommendations. Also, Mr. Anderson admitted that the Rheem unit specifications state that it is to be installed on a dedicated circuit. In ruling on this issue, the trial judge stated the following:

> [t]he Court determines that this is a situation where there was a specification from the manufacturer, that . . . specification required the contractor to be aware of that. And so any cost associated with installing the dedicated circuit according to the manufacturer's specifications is part of the contract, and the contractor is bound by that.

After a careful review of Mr. Anderson's testimony and the record, we agree with the trial court. Therefore, this issue is without merit.

Next, we address the inspection issue. As Precision would finish its work on units at Preston Taylor, it would request that MDHA inspect those units to determine any punchlist items that would need to be addressed prior to final acceptance. Precision alleges that MDHA repeatedly refused

requests for inspections, and in some cases, Precision alleges that MDHA would not inspect units until several months after Precision had completed its work on the unit. MDHA counters by arguing that Precision did not present any evidence of increased costs of performing the work as a result of the alleged delays. In ruling on this issue, the trial judge stated the following:

> As to item number four, on the Preston Taylor Project, this involves whether Mr. Morrow didn't perform inspections alongside the work or if he had a punch list that just contained trivial items. The Court determines again that there is no proof of fact of damages. The plaintiffs haven't carried their burden of proof to demonstrate the existence or fact of damage caused by alleged delays. So their recovery is denied because there's no fact or law basis for it.

We note that Precision has failed to point us to any evidence in the record where its delay damages are quantified by competent proof. In addition, our own review of the record fails to reveal any proof of damages caused by the alleged delay. As a result, we find no error with the trial court's ruling on this issue.

Next, we turn to the issue regarding the five bedroom apartments requiring an extra furnace in each unit. Precision claims that they were delayed due to having to install an extra unit. The trial court held that:

> As to item five, the five-bedroom apartments requiring more units, the Court denies recovery on this claim because the plaintiffs did not perform the requirements of the contract to entitle them to recovery. Specifically, the five-bedroom units are covered by Change Order number one and the plaintiffs failed to follow the procedures outlined under Article 29 so as to qualify for additional costs due for those changes or on the five-bedroom units.

We note that change order number one granted Precision extra compensation and an additional one hundred days to perform the contract. Article 29(e) of the contract that governed this project states the following:

> The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause, or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting a written statement describing the general nature and the amount of the proposal. If the facts justify it, the Contracting Officer may extend the period for submission. The proposal may be included in the notice required under paragraph (b) above. **No proposal by the Contractor for an**

> **equitable adjustment shall be allowed if asserted after final payment under this contract.**

(emphasis added). After a review of the record, it is evident that Precision did not comply with the aforementioned contract language. Therefore, we agree with the trial court that Precision is not entitled to recovery on this issue.

### The Tony Sudekum Project

The first issue that we address regarding the Tony Sudekum Project is Precision's claim that it is entitled to additional compensation due to alleged "unclassified excavation." MDHA took the position that the excavation was included in the specific categories of work, such as sewer lines, water lines, and gas lines, and that no additional payments were warranted. Thus, MDHA rejected Precision's claims for alleged "unclassified excavation." In ruling on this issue, the trial court stated the following:

> [T]he Court determines with respect to item one the unclassified excavation, that there is no ambiguity. The contract provides as to the specific items in dispute, that no additional payments will be made for trenching or backfilling. The Court determines there's not an ambiguity, that this more specific language controls any general language in Item 54. So the Court denies recovery for that unclassified excavation claim on that basis.

Item number 39 of the Tony Sudekum contract states the following, in pertinent part: "[t]renching, backfilling, shoring and bracing shall be considered and designated as a necessary part of the construction and no separate payment will be made thereof." Item number 54 of the contract states that Unclassified Excavation includes "all labor, materials and equipment necessary to perform excavation as needed to perform work as set forth by these documents . . . [t]renching, Backfilling and Compacting for Utilities." We note the well settled rule of contract interpretation that particular and specific provisions of a contract prevail over general provisions. See Southern Surety Co. v. Town of Greeneville, 261 F. 929 (6th Cir. 1920). Accordingly, we agree with the trial judge that the specific language in item number 39 prevails over the general language in item number 54. Therefore, we find this issue to be without merit.

Next, we address Precision's claims for additional compensation for the following work on the Tony Sudekum Project: sod and seed replacement; sidewalks; landscaping; clotheslines; curbs and gutters; valve boxes; and handicap parking. Precision also attempted to obtain additional compensation for various work that they submitted on Pay Request Number 13. In ruling on these issues, the trial court stated the following:

> [T]he Court finds the plaintiffs did not perform the requirements of the contract so as to entitle them to recovery. Specifically, the plaintiffs haven't carried their burden of proof to show that they fulfilled the

requirements of Articles 29(e) and (f) of the General Conditions to qualify for the adjustments.

Article 29(e) of the General Conditions governing the Tony Sudekum project state the following:

> The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause, or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting a written statement describing the general nature and the amount of the proposal. If the facts justify it, the Contracting Officer may extend the period for submission. The proposal may be included in the notice required under paragraph (b) above. **No proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract.**

(emphasis added). The aforementioned language is clear in its requirement that the contractor must assert its claim for an adjustment before final payment under the contract. Upon a review of the record, we find no evidence that Precision complied with the requirements set out in Article 29(e) of the General Conditions to the Tony Sudekum Project. As a result, we find no error with the trial court's ruling on this issue.

Next, we address Precision's claim that it is entitled to quantum meruit. In Castelli v. Lien, 910 S.W.2d 420 (Tenn. Ct. App. 1995), the middle section of this court discussed in detail the doctrine of quantum meruit. The court stated the following:

> Quantum meruit actions are equitable substitutes for contract claims. They enable parties who have provided goods and services to another to recover the reasonable value of these goods and services when the following five circumstances exist: (1) there must be no existing, enforceable contract between the parties covering the same subject matter; (2) the party seeking recovery must prove that it provided valuable goods and services; (3) the party to be charged must have received the goods and services; (4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; (5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

Id. at 427 (internal citations omitted). "[Q]uantum meruit recoveries are limited to the actual value of the goods or services, not their contract price." Id. In the instant case, the trial court denied

Precision's claims for quantum meruit on both the Preston Taylor and the Tony Sudekum Projects because the court found that there was no proof as to the actual value of the services rendered.

We also note that "it is a general rule of law that an implied contract or quasi-contract will not be imposed in circumstances where an express contract or agreement exists." W.E. Scandlyn v. McDill Columbus Corp., 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994) (quoting Fletcher Realty, Inc. v. Hayslope Properties, 712 S.W.2d 478, 481 (Tenn. Ct. App. 1986)). In the instant case, there was clearly an express contract between Precision and MDHA that governed both the Preston Taylor and the Tony Sudekum projects. The contracts contained specific provisions that address the issues presented by Precision in this case. As a result, we agree with the court below that this is not a proper case for recovery under the doctrine of quantum meruit. Therefore, we find this issue to be without merit.

For the aforementioned reasons, we find that the trial court did not err in denying Precision's claims. Now, we turn to MDHA's issue. MDHA asserts that the trial court erred in holding the Eichleay formula was an appropriate method of calculating Precision's claimed damages. Due to our affirmance of the trial court's grant of MDHA's Motion for Involuntary Dismissal, we decline the invitation to address the Eichleay issue, as it is pretermitted.

## Conclusion

For all of the aforementioned reasons, we affirm the judgment of the trial court. Costs on appeal are taxed to the appellant, Precision Mechanical Contractors, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE